PEOPLE *v.* NEAL.

1. INDICTMENT AND INFORMATION—INDORSEMENT OF NAMES OF RES GESTÆ WITNESSES.

   Prosecutor's failure to indorse the name of a *res gestæ* witness upon information charging assault with intent to kill was not ground for a new trial where counter showing was made that such a witness was not known to the prosecution.

2. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

   Newly discovered evidence consisting of alleged contradictory statements made by witnesses at the trial of prosecution for assault with intent to kill *held,* not to constitute a basis for granting a new trial.

3. CRIMINAL LAW—PRESUMPTION OF INNOCENCE—CHARACTER.

   The presumption of innocence of an accused does not include good character.

4. SAME—NO PRESUMPTION OF GOOD CHARACTER.

   There is no presumption in a criminal case that the accused is of good character.

5. SAME—ISSUE AS TO ACCUSED'S CHARACTER.

   The right of an accused to make his character an issue by introduction of testimony, especially in a case involving moral turpitude, is a valuable one and is wholly apart from the presumption of innocence accorded by law.

6. SAME—PRESUMPTION OF INNOCENCE—REASONABLE OPPORTUNITY TO PRESENT CHARACTER WITNESSES—CURING ERROR.

   Since the presumption of innocence requires the prosecution to introduce evidence establishing the guilt of an accused beyond a reasonable doubt, and evidence of character alone may cause a reasonable doubt, failure of trial court in prosecution for assault with intent to kill to accord defendant a reasonable opportunity to have his character witnesses present constituted an error which was not corrected by concession of the prosecution that defendant was a man of good character nor by instruction in effect that good character was presumed.

7. SAME—PREJUDICIAL REMARKS BY COURT—FAIR TRIAL.
    Interjected query by trial court in prosecution of defendant for
        assault with intent to kill, which court may have thought
        facetious, which jury may have taken as indicative of skep-
        ticism on part of judge and which constituted a gratuitous
        insult to defendant who had taken the stand on his own behalf,
        resulted in not according defendant a fair trial.

8. SAME—FAIR TRIAL—PERT REMARKS.
    Pert remarks and quips from the bench have no place in the trial
        of a criminal case, do not comport with judicial dignity and,
        though thoughtlessly uttered, may prove exceedingly damaging
        to the party entitled to a fair trial.

9. SAME—FAIR TRIAL—BELITTLEMENT OF ATTORNEY.
    An accused has a right to be represented by an attorney and
        have the attorney treated with the consideration due such an
        officer of the court, and belittling observations by the court
        aimed at the attorney are, necessarily, injurious to the one
        he represents.

Appeal from Recorder's Court for the City of De-
troit; Jeffries (Edward J.), J. Submitted June 15,
1939. (Docket No. 119, Calendar No. 40,381.) De-
cided September 5, 1939.

Edgar Neal was convicted of felonious assault.
Reversed and new trial granted.

*N. George Bashara,* for appellant.

*Thomas Read,* Attorney General, *Duncan C. Mc-
Crea,* Prosecuting Attorney, and *William L. Brun-
ner* and *Allen J. Asam,* Assistant Prosecuting At-
torneys, for the people.

WIEST, J. Charged with assault upon his wife,
with intent to kill and murder, defendant, upon trial
by jury, was convicted of felonious assault. Defend-
ant for some years was a member of the Detroit
police department, starting as a patrolman and later

promoted to detective, police bureau of censors. He resigned from the police department in 1937. He married in March, 1936, and there is one child. His wife was a former chorus girl and dancer. After he resigned from the police force he went to New York city for a time. The morning of July 27, 1938, he returned to Detroit and, upon being informed by his wife that she wanted a divorce, he deliberately started out to get drunk, claims he succeeded, and wakened in the prisoner's ward in Receiving Hospital with a long cut on his scalp.

The evening of July 27, 1938, his wife was engaged in singing at a restaurant, and the prosecution claims that in the course of the evening defendant came there and, while having a talk with his wife shortly after midnight, slapped her and, upon her screaming and running away from him, he pulled out his revolver, pointed it at his wife, but was seized by others, and in the scuffle two shots were fired.

Defendant prosecutes review by appeal.

In the motion for a new trial it was claimed that the prosecutor failed to indorse a *res gestæ* witness. By counter showing such a witness was not known to the prosecution. In the motion for new trial defendant claimed newly discovered evidence but it appears that it was alleged contradictory statements made by witnesses at the trial.

The trial commenced in the morning, probably at the opening of court; the jury was impaneled, proofs in behalf of the prosecution taken, defendant examined as a witness in his own behalf, and, near the hour of the noon recess, counsel for defendant announced:

"Your honor, that constitutes the defense with the exception of a couple of character witnesses we had coming in here at two o'clock. I didn't know what

the court wanted to do. We will be all finished with that, and it will be very brief testimony.

"*The Court:* Have you any more testimony now?

"*Mr. Fitzgerald:* No, no more now.

"*The Court:* Do you rest?

"*Mr. Fitzgerald:* Well, we will rest after this character testimony.

"*The Court:* Well, they should be here.

"*Mr. Fitzgerald:* If the court please, I didn't know what schedule we were working on.

"*The Court:* You knew what court you were going to be in, didn't you?

"*Mr. Fitzgerald:* That is true, your honor, and I warned them of that because I knew from experience—

"*The Court:* I am glad you knew something about it.

"*Mr. Fitzgerald:* But Mrs. Potter was coming down and a Mrs. Goodwin. They are housewives and I think one is quite elderly. It isn't the easiest thing in the world to maneuver around with them. I had no idea, as a matter of fact, we were going to get through with this case as fast as we did. Of course, with the co-operation of counsel, the court has pushed it right along.

"*The Court:* Well, I am ready to go. I thought we would run here until about two o'clock.

"*Mr. Fitzgerald:* I can have these witnesses the first thing in the morning.

"*The Court:* I would like to have you make your arguments this afternoon.

"*Mr. Fitzgerald:* I see what you mean. I don't know what to do.

"*The Court:* You have Mrs. Potter?

"*Mr. Fitzgerald:* Mrs. Potter, Mrs. Rutledge and another woman.

"*The Court:* To testify to this man's good character?

"*Mr. Fitzgerald:* That is right.

"*The Court:* You will admit that, won't you?

"*Mr. Asam:* That he is of good character—that he was?

"*The Court:* Of course, the law presumes the man is regular.

"*Mr. Fitzgerald:* The character testimony would be in regard to general reputation for truth and veracity and honesty and integrity and for being a peaceful and law-abiding citizen.

"*Mr. Asam:* So far as I know, that is true.

"*The Court:* That is what the law presumes.

"*Mr. Asam:* The law presumes that.

"*Mr. Fitzgerald:* The only thing we want is the benefit of character testimony in the charge. That is my only reason.

"*The Court:* I will give you—

"*Mr. Fitzgerald:* That will help the situation.

"*The Court:* I will give you all the comfort on that you are entitled to. Well, how much time do you want to argue?"

The record shows the closing arguments were then made, whereupon an adjournment was taken until 9:30 o'clock the next morning, at which time the court instructed the jury, therein stating:

"There was some question here yesterday with reference to character witnesses. Now, the law presumes that everybody is regular. You know the Anglo-Saxon theory and outlook of mankind is that everybody is decent and honest, and he who makes a charge against another must prove it. That gives us a tremendous advantage over some of the gentlemen across the water because we have a decent and fair outlook upon mankind and that gives us a much better and greater grasp of the cooperative efforts of mankind. We do not go around with chips on our shoulders and we do not go around with the suspicion that everybody is bad. We have in this country what is called under our law the presumption of in-

nocence and we presume that every man is regular until proven guilty of an offense.

"The question of reputation is important many times, and in addition to the presumption of innocence the defendant has a right to introduce testimony with reference to good character. Counsel has already stated it was understood that testimony would be allowed in. Testimony as to character may be introduced in any controversy to aid you in determining who is telling the truth and the probability of regularity and truthfulness."

Defendant claims that the conduct of the trial judge during the course of the trial, in making remarks and censuring counsel, prejudiced the jury against defendant; that the court was in error in not affording defendant a reasonable opportunity to have his character witnesses present, and the instructions to the jury did not accord defendant the benefit he would have had under testimony of character witnesses.

The presumption of innocence of an accused does not include good character.

"There is no presumption in a criminal case that the accused is of good character." *Greer* v. *United States* (syllabus), 245 U. S. 559 (38 Sup. Ct. 209).

An accused may make his character an issue by introduction of testimony and, in a case involving moral turpitude, such an issue may have considerable bearing upon the accusation. The right to present such an issue is valuable and wholly apart from the presumption of innocence accorded by law.

The trial judge appears not to have considered the presumption of innocence and evidence of good character as serving separately in behalf of the accused.

The presumption of innocence requires the prosecution to introduce evidence establishing the guilt of an accused beyond a reasonable doubt. The evidence

of character alone may cause a reasonable doubt. We think the court was in error in not affording defendant a reasonable opportunity during the usual noon recess to have his character witnesses present, and this error was not corrected by concession of the prosecution nor by the instruction to the jury.

Defendant testified that after drinking—"I don't remember another thing, then, that happened to me. I do not remember leaving the house and going to the Blue Lantern. I don't remember singing."

Whereupon the court interjected the query:

"Remember whether you kept in tune with the orchestra or not?"

The judge may have thought his query facetious and the jury have taken it as indicative of skepticism on his part. In any event the query was a gratuitous insult to the witness. Pert remarks and quips from the bench have no place in the trial of a criminal case, do not comport with judicial dignity and the injurious effect of such, though thoughtlessly uttered, may prove exceedingly damaging to the party entitled to a fair trial.

The accused had a right to be represented by an attorney and have the attorney treated with the consideration due such an officer of the court and belittling observations aimed at the attorney are, necessarily, injurious to the one he represents. Having the prosecutor concede the presumption fixed by law and compelling the accused to accept that in lieu of evidence of character deprived the accused of a substantial right which must be recognized.

An examination of the record leads to the conclusion that defendant has not had a fair trial.

The conviction is reversed and a new trial granted.

BUTZEL, C. J., and BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.