PEOPLE v BLACHURA

Opinion of the Court

1. Criminal Law—Appeal and Error—Defendant's Theory of
   Case—Court Clerk—Voice Problems of Judge.
   It was error for a trial judge in a criminal trial to allow the clerk
   of the court to read the defendant's theory of the case to the
   jury, but such error was harmless and reversal of the defend-
   ant's conviction is not required where (1) the trial judge ex-
   plained to the jury that he was experiencing voice difficulty,
   and (2) the judge cautioned the jury that the instructions
   should be accepted as if he had read them; it is not error per se
   to allow a court clerk to read some or all of the instructions
   when the judge is experiencing voice problems.

2. Criminal Law—Grand Jury—Perjury—Secret Proceedings—
   Appeal and Error—Statutes.
   A short response by a grand jury foreman, at a defendant's trial
   for perjury arising from the defendant's testimony before the
   grand jury, answering a question posed by a prosecutor as to
   why the grand jury had called the defendant to testify does not
   violate a literal reading of the statute which cloaks a grand
   jury proceeding with secrecy; even if such testimony by the
   foreman violates the spirit of the statute, the error would be
   harmless error (MCLA 767.19; MSA 28.959).

3. Criminal Law—Probation—Conditions—Costs—Expenses of
   Prosecution.
   A trial court may require that a defendant pay costs as a
   condition of his probation; however, the costs must bear a
   reasonable relationship to the expenses of prosecution; where
   the record bears no indication that the costs so levied were

---

References for Points in Headnotes
[1, 7] 5 Am Jur 2d, Appeal and Error §§ 791, 810.
[2] 38 Am Jur 2d, Grand Jury §§ 39–41.
[3] 21 Am Jur 2d, Criminal Law §§ 564, 565.
[4] 41 Am Jur 2d, Indictment and Information §§ 19, 20.
[5] 60 Am Jur 2d, Perjury § 28.
[6] 38 Am Jur 2d, Grand Jury § 34 et seq.

reasonably related to the expense of the prosecution, the cause should be remanded for findings with regard to the taxed costs (MCLA 771.3; MSA 28.1133).

DISSENT BY D. E. HOLBROOK, JR., P. J.

4. GRAND JURY—INDICTMENT—CRIMINAL LAW—PRELIMINARY EXAMINATION—CASE PRECEDENT.

A person indicted by a citizen's grand jury is entitled to a preliminary examination; however, the Michigan Supreme Court case which established this rule made it applicable to pending and future cases, therefore, where a defendant was convicted prior to the establishment of the rule, he was not entitled to a preliminary examination and the trial court's failure to conduct a requested preliminary examination was not error.

5. CRIMINAL LAW—PERJURY—GRAND JURY—PROSECUTORIAL MISCONDUCT—DUE PROCESS.

A defendant's indictment for perjury arising from the defendant's testifying before a citizen's grand jury must stand, even if the defendant's alleged perjury may have resulted from prosecutorial misconduct which may have denied the defendant due process of law; prosecutorial misconduct does not permit a person to lie under oath.

6. GRAND JURY—WITNESSES—RIGHT TO COUNSEL—EQUAL PROTECTION.

The significant differences between proceedings before a one-man grand jury and a citizens' grand jury are ample justification for granting a witness before a one-man grand jury the right to have counsel present in the room where the inquiry is held and the denial of that right to a witness before a citizens' grand jury.

7. CRIMINAL LAW—APPEAL AND ERROR—INSTRUCTIONS TO JURY—DEFENDANT'S THEORY OF CASE—COURT CLERK—VOICE PROBLEMS OF JUDGE.

*It was reversible error for a trial judge in a defendant's trial on charges of perjury to have the clerk of the court read the defendant's theory of the case to the jury because the judge had a cold and wanted to save his voice where the judge read the instructions to the jury, then stopped to save his voice and had the clerk read the defendant's theory, and then the judge continued to address the jury after the clerk had finished the defense theory which may have given the appearance to the jury that the defendant's theory was so unimportant or so*

*without merit that the judge could not waste his voice reading it.*

Appeal from Oakland, Arthur E. Moore, J. Submitted June 14, 1977, at Lansing. (Docket No. 29403.) Decided February 22, 1978. Leave to appeal applied for.

Leon Blachura was convicted of perjury. Defendant appeals. Affirmed, but remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Marvin S. Shwedel,* Special Prosecuting Attorney, for the people.

*Leitman & Roeser,* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P. J., and ALLEN and D. R. FREEMAN,* JJ.

ALLEN, J. We agree with all of Judge HOLBROOK, JR.'s dissenting opinion except his ultimate conclusion that the defendant's conviction must be reversed because the trial judge allowed his court clerk to read the defendant's theory of the case to the jury. We agree that error occurred, but believe the error was harmless. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972), MCLA 769.26; MSA 28.1096, GCR 1963, 529.1.

It is not error per se to allow the clerk to read some or all of the instructions when the judge is experiencing voice problems. At least two circuit judges in Michigan have undergone throat surgery or are handicapped by voice problems and have their clerks read all of the instructions. In the present case, there is no evidence that the trial

---

* Circuit judge, sitting on the Court of Appeals by assignment.

judge was not in fact suffering from a severe cold which affected his voice. Finding that he could not continue, he might have taken a brief recess until he recovered. In retrospect, that would have been the preferred course. Alternatively, he might have allowed his clerk to read some other portion of the instructions, and we would probably not find error. The problèm, as Judge HOLBROOK, JR., points out, is that he selected the worst possible moment to defer to his clerk. For that reason, we must agree that the judge erred.

However, the trial judge carefully explained to the jury the reason for the substitution and cautioned them that the instructions should be accepted as if he had read them. Further, the court instructed the clerk to "sound like me". Under these circumstances we cannot believe the trial judge was *sub silentio* signaling the jury that the defendant's theory was to be given little weight. And review of the record convinces us beyond a reasonable doubt that—*in this case*—the result would have been the same even if the disputed procedure had not been followed. *People v Robinson, supra.*

Defendant raises three issues which Judge HOLBROOK, JR., correctly felt required no discussion because of his finding of reversible error on the question discussed above. We refer to defendant's issues II, III and VI.[1] In *People v Blachura,* 396

---

[1] The three issues are stated in defendant's brief as follows:

"II. Whether this court erred when in *People v Blachura,* 59 Mich App 664 (1975), it reversed the trial court's discretionary grant of a motion for a new trial?"

"III. Whether the trial court erred in taxing costs in the amount of $5,000.00 against Leon Blachura when the amount bears no reasonable relationship to the true expense of the prosecution?"

"VI. Whether the trial court committed reversible error by allowing the foreman of the grand jury to testify to an opinion expressed by the individual members of the grand jury, in violation of MCLA 767.19; MSA 28.959?"

Mich 723; 242 NW2d 390 (1976), the Supreme
Court dismissed defendant's appeal of this Court's
decision in *People v Blachura,* 59 Mich App 664;
229 NW2d 877 (1975). We are precluded from
going further on issue II. As to issue VI, the
alleged error occurred when the grand jury fore-
man, in response to a question by the prosecutor,
testified as to why the grand jury called the de-
fendant.

"Q. (By Mr. Newcomer, continuing): Mr. Reynolds,
can you tell us why you felt that the line of questioning
that you asked Mr. Blachura was material to the in-
quiry regarding the Drain Commission Office?
"A. Yes. At that point in time I think we had a
conflict in the minds of the jurors whether in fact Mr.
Barry and Mr. Nicholes had an interest in the M-59
property.
"MR. NEWCOMER: I have no further questions."

This three-line response by the foreman does not
violate MCLA 767.19; MSA 28.959 when that stat-
ute is literally read. Assuming, *arguendo,* that the
foreman's response violated the spirit of the stat-
ute, *viz.:* total protective secrecy of the grand jury
proceedings, we find such error harmless. *Cf. Peo-
ple v Kert,* 304 Mich 148; 7 NW2d 251 (1943).

Issue III, while not demanding reversal of de-
fendant's conviction, does require remanding to
the trial court for further findings as to costs. As a
condition of defendant's probation, defendant was
required to "pay costs in the amount of $1,000 for
each count, or a total of $5,000". Under MCLA
771.3; MSA 28.1133, the trial court had the power
to assess costs. But costs must bear a reasonable
relationship to the expenses of prosecution. *People
v Teasdale,* 335 Mich 1; 55 NW2d 149 (1952),
*People v Barber,* 14 Mich App 395; 165 NW2d 608

(1968). In the instant case there is no indication that the costs levied were reasonably related to the expense of the prosecution. On this issue the record is blank. Therefore, this cause is remanded for findings with regard to the taxed costs. In all other respects, the defendant's conviction and sentence is affirmed.

Affirmed and remanded in accordance with this opinion.

D. R. Freeman, J., concurred.

D. E. Holbrook, Jr., P. J. *(dissenting)*. This perjury conviction has a long history in Michigan courts. *People v Blachura,* 390 Mich 326; 212 NW2d 182 (1973), and *People v Blachura,* 59 Mich App 664; 229 NW2d 877 (1975), *appeal dismissed,* 396 Mich 723; 242 NW2d 390 (1976). However, the instant case represents defendant-appellant Blachura's first appeal as of right from his November 4, 1971, conviction.

On June 24, 1971, appellant was indicted on six counts of perjury by an Oakland County citizens' grand jury investigating corruption in the county drain commissioner's office. After trial a jury found appellant guilty of five of the six counts and procedural skirmishing followed, represented in part by the above cited appellate opinions.

Defendant alleges numerous errors in the grand jury proceedings which led to his indictment and in the conduct of the trial. Our careful review of the record reveals no reversible error in the pretrial stages and Part I, below, represents the majority opinion as to the pre-trial issues. However, I believe the trial judge reversibly erred by allowing his court clerk to read defendant's theory to the jury and Part II, below, is my dissent.

I

First, defendant assigns error to the trial court's failure to conduct a requested preliminary examination after defendant's indictment. In *People v Duncan,* 388 Mich 489; 201 NW2d 629 (1972), the Michigan Supreme Court provided that a person indicted by a citizens' grand jury is entitled to a preliminary examination. However, the Court limited this right to "pending" and "future" cases. Defendant Blachura was convicted on November 4, 1971; *Duncan* was decided October 31, 1972. We note the apparent conflict between several Court of Appeals panels on the applicability of *Duncan.* In *People v Harris,* 47 Mich App 757; 209 NW2d 793 (1973), the panel remanded for a preliminary examination on authority of *Duncan,* since an exam was requested prior to trial and even though *Harris* was convicted approximately a year before *Duncan* was handed down. Subsequent decisions by various panels have analyzed the applicability of *Duncan* in terms of "retroactivity". *People v Carter,* 54 Mich App 69; 220 NW2d 330 (1974), *lv den,* 394 Mich 802 (1975), *People v Lazaroff,* 50 Mich App 84; 212 NW2d 743 (1973), *lv den,* 390 Mich 815 (1973), and *People v Valoppi,* 61 Mich App 470; 233 NW2d 41 (1975). While we confess some uncertainty as to what our Supreme Court meant when it used the phrase "all *pending* cases"[1] we believe the better view is expressed by *Carter, Lazaroff* and *Valoppi* for the reasons set forth in *Carter, supra,* at 71–72. Defendant was not entitled to a preliminary examination.

---

[1] There is surprisingly little authority defining the term "pending", *see Hartman v Edwards,* 260 Mich 281, 285; 244 NW 474 (1932), and it is not clear whether our Supreme Court means any stage before the right must be exercised (*i.e.,* in this case, after indictment but before trial), pending final judgment or pending exhaustion of appellate procedures.

Secondly, defendant contends that he was denied due process of law as a result of the prosecutor's improper advice and comments during the grand jury proceedings. Specifically defendant claims that the prosecutor's warnings not to reveal grand jury testimony to "anyone" so inhibited defendant from communicating even with his attorney that he was effectively denied access to counsel. Next defendant claims that these warnings coupled with inquiries and comments about defendant's requests to see his attorney and inquiries about defendant's conversations with his attorney breached the attorney-client privilege. Finally defendant contends the prosecutor's warnings to defendant and other grand jury witnesses not to reveal testimony to "anyone" prevented him from preparing a defense. Because of these alleged due process violations defendant urges this Court to apply an exclusionary rule suppressing defendant's grand jury testimony which forms the basis of the perjury indictment.

In essence defendant argues that if he is not properly advised of his rights he has a license to lie[2] to the grand jury and not suffer the penalties for perjury. The record clearly shows that the defendant was given an instruction as to his Fifth Amendment privilege, the consequence of the general grand jury oath, a specific warning not to perjure himself and his privilege to consult his attorney outside the grand jury room. The record also reveals many improprieties on the part of the prosecutor in "advising" the defendant. While we cannot condone such prosecutorial conduct, it does not permit defendant to lie under oath.

Defendant was indicted for perjury. Two recent

---

[2] For the sake of argument only we may occasionally refer to defendant's grand jury statements as "lies" or "perjury"; I do not express any opinion as to defendant's guilt or innocence.

United States Supreme Court cases make it clear that perjury convictions will be upheld despite flagrant government abuses or defects in grand jury proceedings which effectively deprive a defendant of his constitutional rights. *United States v Wong,* 431 US 174; 97 S Ct 1823; 52 L Ed 2d 231 (1977), *United States v Mandujano,* 425 US 564; 96 S Ct 1768; 48 L Ed 2d 212 (1976). Although these cases involve convictions under Federal perjury statutes for lying before Federal juries, the principles are applicable to a prosecution under state law.[3]

In *Mandujano* the Supreme Court briefly outlines the history and purpose of grand juries in our jurisprudence. The grand jury is an old and useful tool in the investigation of various types of criminal activity.

"In this constitutional process of securing a witness' testimony, perjury simply has no place whatever. Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative." *Mandujano* at 576.

Later, at 577, the Court said:

"[O]ur cases have consistently—indeed without exception—allowed sanctions for false statements or perjury; they have done so even in instances where the perjurer complained that the Government exceeded its constitutional powers. See *e.g., United States v Knox,* 396 US 77 [90 S Ct 363; 24 L Ed 2d 275] (1969); *Bryson v United States,* 396 US 64 [90 S Ct 355; 24 L Ed 2d 264] (1969); *Dennis v United States,* 384 US 855 [86 S Ct 1840; 16 L Ed 2d 973] (1966); *Kay v United States,* 303 US 1 [585 S

---

[3] We express no opinion as to the incorporation or application of other Federal grand jury principles or procedures to the conduct of grand jury proceedings in Michigan.

Ct 468; 82 L Ed 607] (1938); *United States v Kapp,* 302
US 214 [58 S Ct 182; 82 L Ed 205] (1937)."

In *Wong, supra,* the petitioner claimed that her
limited command of the English language pre-
vented her from understanding the Fifth Amend-
ment warnings given to her. The government did
not challenge the lower court's finding that in
legal effect petitioner was unwarned of her Fifth
Amendment privilege. The Court held that even
absent a Fifth Amendment warning, there is no
license for one who testifies to commit perjury.

"Finally, to characterize these proceedings as 'unfair'
by virtue of inadequate Fifth Amendment warnings is
essentially to say that the Government acted unfairly
or oppressively by asking searching questions of a wit-
ness uninformed of the privilege. But, as the Court has
consistently held, perjury is not a permissible way of
objecting to the Government's questions. 'Our legal
system provides methods for challenging the Govern-
ment's right to ask questions—lying is not one of them.'
* * * *Bryson v United States,* 396 US 64, 72 (1969),
*United States v Mandujano,* 425 US at 577, 585. * * *
Indeed, even if the government could, on pain of crimi-
nal sanctions, compel an answer to its incriminating
questions, a citizen is not at liberty to answer falsely.
*United States v Knox, supra,* 396 US, at 82–83. If the
citizen answers the question, the answer must be truth-
ful." *Wong, supra,* at 180.

In light of these controlling principles we briefly
address defendant's specific allegations of prosecu-
torial misconduct. Defendant was not physically
denied access to counsel; indeed he consulted with
his attorney outside the grand jury chamber on
several occasions. *People v Blachura,* 396 Mich at
724, *People v Blachura,* 59 Mich App at 667. Even
if he was denied access to counsel he would have

no right to perjure himself. See *People v Blachura,*
59 Mich App at 667. Next, even if the prosecutor's
comments and questions improperly inquired into
the attorney-client relationship[4] or defendant's ex-
ercise of his Fifth Amendment privilege,[5] lying is
not a permissible way of objecting to the prosecu-
tor's questions. *Bryson, supra,* at 72. Finally, de-
fendant's unsubstantiated assertions that other
grand jury witnesses would not talk to defense
counsel are not properly before this Court on
appeal. Defendant Blachura was provided with
transcripts of his grand jury testimony and we find
defense counsel's claimed inability to prepare a
defense to be without merit.

We believe *Mandujano* and *Wong* and cases
cited therein express a firm commitment to punish
those who perjure themselves even in the face of
government improprieties and denials of constitu-
tional rights. As in *Mandujano,* defendant Bla-
chura was under oath to tell the truth and was
clearly warned not to perjure himself. As the
*Mandujano* Court summarized:

---

[4] To the extent that defendant's claim is grounded on some compul-
sion to testify as to his conversations with his attorney, his claim fails
because no attorney-client privilege was ever asserted. Defendant did
testify as to the substance of conversations with counsel and thus is
deemed to have waived the privilege. The attorney-client privilege
belongs to the client and the client may waive it if he chooses.
*Schaibly v Vinton,* 338 Mich 191, 196; 61 NW2d 122 (1953), *In re
Arnson Estate,* 2 Mich App 478, 485; 140 NW2d 546 (1966), *Agee v
Williams,* 17 Mich App 417, 423; 169 NW2d 676 (1969).

[5] It is difficult to read emotion into the grand jury transcripts.
While defendant urges us to view the prosecutor as an overbearing
aggressor making snide comments about defendant's exercise of his
Fifth Amendment right, an equally plausible interpretation is that
the prosecutor was properly asking whether defendant was exercising
a privilege not to answer or whether defendant was merely being
evasive. Absent the assertion of some privilege a person has an
absolute duty to testify before a grand jury, *Mandujano, supra,* at 581,
*United States v Calandra,* 414 US 338, 343; 94 S Ct 613; 38 L Ed 2d
561 (1974), and if defendant Blachura was not asserting a privilege he
had no excuse for not answering a question.

"In any event, a witness sworn to tell the truth before a duly constituted grand jury will not be heard to call for suppression of false statements made to that jury." 425 US at 582.

Even if we accept defendant's argument that prosecutorial misconduct resulted in the denial of due process of law, defendant's indictment for perjury must stand.[6]

Finally, defendant urges us to find the so-called citizens' grand jury act, 1970 PA 9, MCLA 767.7a *et seq.;* MSA 28.947(1) *et seq.,* unconstitutional because it denies equal protection of the law to witnesses who appear before a citizens' grand jury. Defendant contends that the statutory provisions which create one-man and citizens' grand juries unfairly discriminate against witnesses who appear before a citizens' grand jury because they, unlike those who appear before a one-man grand jury, are not entitled to have counsel present in the grand jury chamber. Only those granted immunity may have counsel present in a citizens' grand jury proceeding. MCLA 767.19e; MSA 28.959(5). *People v Blachura, supra,* 59 Mich App at 666.

We decline defendant's invitation to address an equal protection argument which has already been decided adversely to defendant. *People v Blachura, supra,* 59 Mich App at 667. The great difference in the power of the one-man juror—the powers of summary contempt and immediate grants or denials of immunity—make the presence of counsel in

---

[6] Defendant has made no showing that there was any causal connection between the prosecutorial misconduct and the perjured statements. If defendant intended to imply that the perjured statements were somehow coerced by the prosecutorial misconduct, he should have argued "duress" at trial, rather than constructing a due process challenge on appeal. *See* concurring opinion of Justice Brennan in *Mandujano, supra,* at 585.

the grand jury chamber mandatory. Counsel is necessary to balance the awesome power of the judge-inquisitor. In view of the significant differences between one-man and citizens' grand juries, defendant has not met the heavy burden placed on him to overcome the presumption of statutory validity. *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 667; 232 NW2d 636 (1975).

## II

At this point I part company with my fellow judges. I believe the trial judge reversibly erred by allowing his court clerk to read defendant's theory of the case to the jury.

After counsel submitted their requested instructions and after counsel had an opportunity to discuss the instructions, the trial judge began his charge to the jury. He first gave a general overview of the duties of the jury, explained the indictment and the elements of the crime of perjury, and, as requested, gave the prosecution's theory of the case; these matters comprise about 20 pages of transcript.[7]

Then the judge came to defendant's theory of the case:

"So much for the contention of the Prosecutor in this case. Now the contention of the Defendant or the Defendant's theory of the case is as follows.

"I will let you do a little reading here, to save my voice. The Clerk will read from my notes. They will go on the record as if I were charging you, and see if you can sound like me Mr. Clerk."

---

[7] For purposes of illustrating the relative length of various parts of the jury instructions it is convenient to refer to the number of pages of transcript.

The court clerk proceeded to read the defendant's theory which comprises about four pages of transcript. The judge then proceeded to finish charging the jury; this accounts for the next 20 pages of transcript. In short, the judge managed to read 20 pages of instructions, stopped to save his voice when it was time to read defendant's theory, and continued for another 20 pages after defendant's theory was read by the court clerk.

Once the jury was excused defense counsel objected to this curious procedure, contending that the judge seemed to be giving partiality to the people's case by having the clerk read the defendant's theory to the jury. The judge overruled the objection, reasoning,

"That is a techinicality *[sic]* that a lawyer might note, and your objection is overruled. I think his voice, was on the record, was as good as mine, maybe better under my cold conditions."

While I cannot fault the judge for having a cold and consequently wanting to save his voice, I believe that he chose a critically inappropriate time to allow his clerk to partially instruct the jury.

This is a rather unique situation and a case of first impression in Michigan. The applicable court rule, GCR 1963, 516.7, provides in part:

"It is the *duty* of the *court* to present to the jury the issues in the case and the *theories of the parties.* * * * The Court need not give any statement to the jury in the form submitted if the court presents to the jury the material substance of the issues and of the theories of each party." (Emphasis supplied.)

Subsection 516.7, added in 1970, requires the trial

judge to instruct the jury on defendant's theory of the case if the defendant so requests. *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975). There can be little dispute that the term "court" in this context means the judge. See *State Board of Education v von Zellen,* 1 Mich App 147, 158; 134 NW2d 828 (1965).

As a general proposition the charge to the jury is especially crucial in a criminal case. Although GCR 1963, 516.1 authorizes the trial judge to make comments on the evidence, the testimony and character of witnesses as "the interests of justice require", this is not a license for the trial judge to impose his or her opinion as to the verdict on the jury. *People v Padgett,* 306 Mich 545, 552–555; 11 NW2d 235 (1943), *People v Barmore,* 368 Mich 26, 28; 117 NW2d 186 (1962), *People v Oates,* 369 Mich 214, 216–217; 119 NW2d 530 (1963), *People v Wichman,* 15 Mich App 110; 166 NW2d 298 (1968).

In *Wichman, supra,* now Justice LEVIN wrote:

"A trial judge desiring to see that the case goes to the jury without disclosure of his personal views in the matter should be able, no matter how overwhelming the people's case, to preserve an appearance of impartiality in his instructions. By presenting the defendant's theory, presumably just argued to the jury, the judge can avoid creating the impression that he has stepped out of his role of impartial judicator and is now plugging for his own point-of-view." 15 Mich App at 115.

It has long been recognized that the words and actions of a trial judge may weigh heavily with a jury. *People v King,* 384 Mich 310, 315; 181 NW2d 916 (1970), *Snyder v United Benefit Life Insurance Co,* 371 Mich 36, 44–45; 123 NW2d 234 (1963), citing *McDuff v The Detroit Evening Journal Co,* 84 Mich 1, 10; 47 NW 671 (1890). Even inadvertent

or thoughtless remarks by a judge may prove exceedingly prejudicial in a criminal trial. *People v Neal,* 290 Mich 123, 129; 287 NW 403 (1939).

A defendant is entitled to a fair and impartial instruction on his or her theory of the case, although not in the exact form requested.[8] The leading commentators on Michigan court rules state:

> "The theories of each party and issues raised thereby must be stated fairly, giving *equal stress* to the positions of each party." (Emphasis supplied.) 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), at 562.

See also 88 CJS, Trial, § 275, p 736. The trial judge should avoid the appearance of favoring one party by giving undue emphasis to that party's theory.

> "Since instructions should not draw the attention of the jury to particular facts, it is error to give instructions * * * which unduly emphasize issues, theories, defenses * * * whether by repetition or by singling them out and making them unduly prominent, or instructions which in any way unduly favor one party, although the instructions may be correct as legal propositions." 88 CJS, Trial, § 340, pp 903–906.

See also 88 CJS, Trial, § 299, p 811; 75 Am Jur 2d, Trial, § 643, pp 603–604; *Fields v Rutledge,* 284 SW2d 659, 662 (Ky App, 1955), *Martin Flying Service v Martin,* 233 NC 17; 62 SE2d 528 (1950).

---

[8] The caveat in GCR 1963, 516.7 that the trial judge need not deliver a party's theory in the requested "form" does not save the judge's procedure. This section of the rule allows the judge to exercise some discretion in presenting an aspect of an issue or theory which has been requested but is not justified for one reason or another. It does not allow unlimited discretion in presenting a party's theory and certainly does not authorize the judge to improperly influence a jury's verdict. A judge may not choose a "form" which gives unequal and unfair stress to one party's theory.

I conclude that the judge's unfortunate choice of timing in allowing his clerk to read defendant's theory is reversible error. Had the judge chosen to save his voice during the reading of the prosecution's theory, defendant's convictions would probably stand. Here, however, the judge read instructions comprising 20 pages of transcript both before and after the clerk read defendant's theory. This lack of equal stress on defendant's theory singled it out from the rest of the instructions. Were the jurors to infer that the defendant's theory was so unimportant or so without merit that the judge could not waste his voice reading it? If a trial judge's words weigh heavily with a jury, *King, supra,* at 315, his decision not to speak would weigh as, if not more, heavily.

This Court reviews the charge as a whole, *Shreve v Leavitt,* 51 Mich App 235; 214 NW2d 739 (1974), and although technically the jury was instructed on defendant's theory, the judge's decision to save his voice at that critical point failed to accord defendant's theory equal prominence and credibility in the eyes of the jury. I cannot say this error was harmless beyond a reasonable doubt and I would reverse and remand for a new trial.