MOLONY-VIERSTRA v MICHIGAN STATE UNIVERSITY

Docket No. 46845. Submitted June 11, 1980, at Lansing.—Decided
November 4, 1980.

Karen Molony-Vierstra had her automobile ticketed and im-
pounded by Michigan State University campus safety officers
when that automobile was parked in a faculty and staff parking
lot without the necessary parking sticker attached. She was
required to pay a $20 towing fee before the impounded vehicle
would be released to her. She thereafter commenced a class
action challenging the validity of the Michigan State Univer-
sity ordinance under which the impoundment was undertaken.
The Court of Claims, Robert Holmes Bell, J., granted defendant
university's motion for summary judgment, on the ground that
plaintiff's complaint failed to state a cause of action. Plaintiff
appeals. *Held:*

1. The board of trustees of Michigan State University is
empowered to adopt ordinances governing parking and traffic
provided that such ordinances are in substantial conformity
with the Uniform Traffic Code. The university ordinance pro-
viding for impoundment of improperly parked vehicles is in
substantial conformity with the provisions of the Uniform
Traffic Code.

2. The president of Michigan State University has the au-
thority to authorize the imposition of a fee relative to the
release of vehicles impounded pursuant to university ordinance,
since such action is within the power of the president to
implement the actions of the board of trustees. The fee imposed
may properly include not only the actual cost of towing the

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 15A Am Jur 2d, Colleges and Universities § 5.
[2, 4, 6] 7A Am Jur 2d, Automobiles and Highway Traffic § 284.
[5] 16A Am Jur 2d, Constutitional Law § 839 *et seq.*
[7] 5 Am Jur 2d, Appeal and Error § 1009 *et seq.*
   20 Am Jur 2d, Costs §§ 14, 15.
[8] 16A Am Jur 2d, Constitutional Law §§ 827, 839 *et seq.*
[9] 16A Am Jur 2d, Constitutional Law § 580 *et seq.*
[10] 7A Am Jur 2d, Automobiles and Highway Traffic § 284.
   16A Am Jur 2d, Constitutional Law § 586.

impounded vehicle, but also, the administrative costs associated with the towing and impoundment program.

3. Impoundment of parked vehicles without a prior hearing does not violate due process since, although the vehicle owner's property interest relative to the deprivation of use of the vehicle is substantial, the risk of erroneous deprivation is slight and the use of other than summary procedures would materially affect the university's ability to provide the parking space for faculty and staff necessary to insure smooth functioning of the university.

Affirmed.

G. R. DENEWETH, J., concurred. He would, however, award costs to defendant on the basis that plaintiff's action was wholly frivolous and vexatious.

T. M. BURNS, P.J., dissented. He would hold that the university's ordinance, by failing to provide a hearing prior to impoundment, was violative of due process. He would reverse.

OPINION OF THE COURT

1. COLLEGES AND UNIVERSITIES — MICHIGAN STATE UNIVERSITY — ORDINANCES — TRAFFIC REGULATION — POWERS OF BOARD OF TRUSTEES.

The board of trustees of Michigan State University is empowered to adopt ordinances governing parking and traffic on its campus provided that such ordinances are in substantial conformity with the Uniform Traffic Code as promulgated pursuant to statute (MCL 390.891; MSA 15.1120[51]).

2. COLLEGES AND UNIVERSITIES — ORDINANCES — MOTOR VEHICLES — UNIFORM TRAFFIC CODE.

The Michigan State University ordinance providing for the impoundment of automobiles which are parked in restricted parking spaces is in substantial conformity with the provisions of the Uniform Traffic Code (Michigan State Ordinances, 1974, §§ 46.03, 46.0310, 1976 AACS R 28.1105).

3. COLLEGES AND UNIVERSITIES — MICHIGAN STATE UNIVERSITY — POWERS OF THE PRESIDENT — ORDINANCES — FEES.

The president of Michigan State University has authority to authorize the imposition of a fee relative to the recovery of a vehicle which has been impounded pursuant to a university ordinance; such action is within the authority of the president of the university to implement the actions of the university's board of trustees (MCL 390.113; MSA 15.1113).

4. COLLEGES AND UNIVERSITIES — ORDINANCES — MOTOR VEHICLES — IMPOUNDMENT — FEES — ADMINISTRATIVE COSTS.

The imposition of a $5.00 fee over and above the actual cost of towing a vehicle pursuant to a university ordinance providing for the impoundment of improperly parked vehicles is proper in that it is a permissible means of recovering the administrative costs of the towing and impoundment program.

5. CONSTITUTIONAL LAW — DUE PROCESS — HEARING — DEPRIVATION OF PROPERTY — GOVERNMENTAL INTEREST.

The question of whether due process requires a hearing prior to the deprivation of a property interest by a governmental unit involves consideration of: 1) the nature and weight of the private interest being affected by the governmental action, 2) the risk of an erroneous deprivation of such interest as a result of the use of summary procedures, and 3) the governmental interests served by such procedures and the extent to which those interests would be affected by requiring procedures other than procedures of a summary nature.

6. COLLEGES AND UNIVERSITIES — ORDINANCES — MOTOR VEHICLES — IMPOUNDMENT — DUE PROCESS.

A university ordinance providing for the impoundment of vehicles which are parked in reserved spaces, coupled with an authorization by the university's president for the payment of a towing and administration fee before the vehicle is released from impoundment, does not violate due process by reason of the failure to provide a hearing prior to impoundment since, although the vehicle owner's interest is substantial, the risk of erroneous deprivation of the use of the vehicle is slight and the use of other than summary procedures would burden the smooth functioning of the university by negating the ability of the university to provide ready access to parking space to its faculty and staff.

CONCURRENCE BY G. R. DENEWETH, J.

7. COSTS — APPEAL — VEXATIOUS APPEALS — COURT RULES.

*Costs should be assessed in favor of an appellee in the Court of Appeals where the appeal is wholly frivolous and vexatious (GCR 1963, 816.5).*

DISSENT BY T. M. BURNS, P.J.

8. CONSTITUTIONAL LAW — DUE PROCESS — HEARING — NOTICE — OPPORTUNITY TO BE HEARD.

*Due process requires a hearing before an impartial decision*

*maker, notice of that hearing, and the opportunity to present one's case.*

9. Constitutional Law — Due Process — Deprivation of Property — Automobiles.

*The temporary loss of the use of one's automobile deprives the owner of a property interest which falls within the protection of the due process clause (US Const, Am XIV, 1963 Const, art 1, § 17).*

10. Constitutional Law — Colleges and Universities — Traffic Ordinances — Impoundment of Vehicles — Due Process.

*A university ordinance which permits seizing and towing of a parked vehicle without affording a prior hearing constitutes unconstitutional deprivation of property without due process to the extent that such impoundment applies to a vehicle which is not a safety hazard (US Const, Am XIV, Const 1963, art 1, § 17).*

*Richard W. Kinkade,* for plaintiff.

*Byron H. Higgins,* for defendant.

Before: T. M. Burns, P.J., and Beasley and G. R. Deneweth,* JJ.

Beasley, J. Plaintiff, Karen Molony-Vierstra, filed a class action suit in the Court of Claims in which she sought declaratory and injunctive relief, alleging the invalidity of certain parking ordinances adopted by Michigan State University. In her complaint, plaintiff stated that her husband had parked her car in a parking lot on the Michigan State University campus which was reserved for faculty and staff vehicles bearing a certain type of permit. Plaintiff's car, which did not have a permit, was ticketed and towed to an impoundment lot pursuant to §§ 46.03 and 46.0310 of the university ordinances. The same day, she paid the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

$20 towing fee, and the vehicle was released to her.

Defendant filed a motion for summary judgment pursuant to GCR 1963, 117.2(1), alleging that plaintiff had failed to state a cause of action. The Court of Claims granted defendant's motion for summary judgment, and plaintiff now appeals as of right.

Plaintiff first alleges that there is no valid statutory or constitutional basis for adopting the ordinances pursuant to which her vehicle was impounded. We do not agree.

Article 8, § 5 of the Michigan Constitution of 1963 states that the Board of Trustees of Michigan State University "shall have general supervision of its institution". In addition, MCL 390.106; MSA 15.1126 provides:

"Sec. 6. * * * The state board of agriculture shall have the general control and supervision of the Michigan agricultural college, the farm pertaining thereto and lands or other property, which now or hereafter may belong to said college; of all appropriations made by the state or by congress for the support of said college, or for the support of the experiment station or any substation, or for any other purpose for which said college is created; and also the management of all lands that may hereafter be donated by the national government to this state in trust for the promotion of agriculture and industrial pursuits. The state board of agriculture may receive, hold and manage any property granted or devised to it or to the Michigan agricultural college to promote any of the objects for which said college is created. The board shall have plenary power to adopt such ordinances, by-laws and regulations not in conflict with this act as it may deem necessary to secure the successful operation of the college and to promote its designed objects."

References in this statute to "state board of

agriculture" and "Michigan agricultural college" are to be construed to mean "board of trustees of Michigan State University"[1] and "Michigan State University".[2]

Specific authority to enact parking and traffic ordinances is granted to the board of trustees in MCL 390.891; MSA 15.1120(51). At the time of the incident involved in the case at bar, this statute read:

> "Sec. 1. The governing boards of state universities and colleges may each enact parking, traffic and pedestrian ordinances for the government and control of their respective campuses and may provide that violation of such ordinance is a misdemeanor punishable by a fine of not to exceed $25.00 for each violation: Provided, That enforcement of such ordinances shall be by law enforcement officers of the state of Michigan, county, township or city wherein the violation of any such ordinance occurs. Such ordinance shall be in substantial conformity with the uniform traffic code promulgated pursuant to the provisions of Act No. 62 of the Public Acts of 1956, being sections 257.951 to 257.954 of the Compiled Laws of 1948."

Under the statute, there is a valid basis for adopting the ordinances pursuant to which plaintiff's vehicle was impounded if these ordinances are in "substantial conformity" with the Uniform Traffic Code. Section 2.5 of the Uniform Traffic Code[3] states:

> "Sec. 2.5. Authority to impound vehicles.
> "A member of the police department may remove a vehicle from a street or highway to the nearest garage or other place of safety, or to a garage designated or

---

[1] MCL 390.102; MSA 15.1122.

[2] MCL 390.101; MSA 15.1121.

[3] Uniform Traffic Code for Cities, Townships, and Villages, Department of State Police, 1976 AACS R 28.1105.

maintained by the police department or otherwise maintained by this governmental unit, under the circumstances hereinafter enumerated. The necessary costs for the removal shall become a lien on the vehicle and the person into whose custody the vehicle is given may hold it until the expenses involved have been paid:

"(a) When a vehicle is left unattended on a bridge, viaduct, causeway, subway, tube, or tunnel where the vehicle constitutes an obstruction to traffic.

"(b) When a vehicle on a street is so disabled as to constitute an obstruction to traffic, and the person in charge of the vehicle is, by reason of physical injury, incapacitated to such an extent as to be unable to provide for its custody or removal.

"(c)' When a vehicle is left unattended on a street and is so parked as to constitute a definite hazard or obstruction to the normal movement of traffic.

"(d) When a vehicle is found being driven on the streets or highways in such an unsafe condition as to endanger persons or property.

"(e) When a vehicle is left unattended on a street continuously for more than 48 hours and may be presumed to be abandoned.

"(f) When the driver of the vehicle is taken into custody by the police department and the vehicle would thereby be left unattended upon the street.

"(g) When removal is necessary in the interest of public safety because of fire, flood, storm, snow, or other emergency reason.

"(h) When a vehicle is found parked in a 'tow-away zone' designated by the traffic engineer and properly signposted."

The corresponding portion of the Michigan State University ordinances reads:[4]

".03—Impound vehicles. Members of the Department of Public Safety are hereby authorized to remove a vehicle from a street, highway or parking area to the nearest garage or other place of safety, or to a garage

---

[4] Michigan State University Ordinances, 1974, § 46.03 *et seq.*

designated or maintained by the Department of Public Safety, under the circumstances hereinafter enumerated:

".031—When any vehicle is left unattended upon any bridge, viaduct or causeway, or subway where such vehicle constitutes an obstruction to traffic;

".032—Where a vehicle upon a highway is so disabled as to constitute an obstruction to traffic and the person or persons in charge of the vehicle are by reason of physical injury incapacitated to such an extent as to be unable to provide for its custody or removal;

".033—When any vehicle is left unattended upon a street or parking area and is so parked illegally as to constitute a definite hazard or obstruction to the normal movement of traffic;

".034—When a vehicle is found being driven upon the streets and is not in proper condition to be driven;

".035—When a vehicle is left unattended upon a street continuously for more than forty-eight hours and may be presumed to be abandoned;

".036—When the driver of such vehicle is taken into custody by the Department of Public Safety and such vehicle would thereby be left unattended upon the street;

".037—When removal is necessary in the interest of public safety because of fire, flood, storm, snow, or other emergency reason;

".038—When any vehicle is left unattended in any parking area under such circumstances as to be presumed to be abandoned;

".039—When any vehicle is found in violation and where it is determined that there are three or more outstanding violation citations against the same vehicle. Such a vehicle shall not be released from impoundment until there is satisfactory evidence that all outstanding citations relating to the vehicle have been cleared with the Court;

".0310—When any vehicle is found parked in an area specifically reserved for vehicles bearing a certain type of university permit or in a parking space specifically reserved for the exclusive use of one vehicle;

".0311—When any vehicle is found parked so as to

obstruct university operations or is parked on lawns or in shrubbery."

This portion of the ordinance is closely modeled after § 2.5 of the Uniform Traffic Code. While the ordinances include situations where parked vehicles can be towed which are not included in the Code, these modifications appear to be a reasonable attempt to adopt the Code—which was promulgated for use by cities, townships and villages[5] —to the particular needs of Michigan State University. It is noted that the board of trustees is granted authority to enact parking ordinances in MCL 390.891; MSA 15.1120(51), and that the Uniform Traffic Code does not cover the subject of off-street parking. We find that the challenged portion of the ordinance is in "substantial conformity" with the Uniform Traffic Code and that there is a valid statutory basis for their adoption.

Plaintiff next contends that even if defendant had a statutory basis for towing her car it had no valid authority to impose the $20 towing fee or to hold plaintiff's car in order to collect the fee. The towing fee was set by defendant's department of public safety, with the approval of the university's president. In arguing the invalidity of this fee, plaintiff notes that the constitutional section and statutes cited above all refer to the board of trustees, not the university's president. She also cites from the board of trustee by-laws in support of her contention that only the trustees could establish such a fee:

"The Board is authorized to prescribe rules governing the use of all University property by the faculty, staff, employees, students, and the general public and the

_____
[5] MCL 257.951; MSA 9.2651.

conduct of all entering upon said property, or in attendance at the University."[6]

MCL 390.113; MSA 15.1133, which outlines the duties of the president of Michigan State University, does not support plaintiff's contention:

"Sec. 13. The president, professors and associate professors of the Michigan agricultural college shall constitute the faculty, which shall select some suitable person to act as secretary of the faculty. The president of the college shall be the president of the faculty, and shall be the official channel of communication between the faculty and the state board of agriculture. He shall be the administrative head of the college and, as such, shall be responsible for carrying into effect the ordinances, rules and regulations of the faculty and of the state board of agriculture."

"The President, as the principal executive officer of the University, shall exercise such powers as are inherent in the position in promoting, supporting, or protecting the interests of the University and in managing and directing all of its affairs; may issue directives and executive orders not in contravention of existing Board policies; shall be responsible for all business policies as heretofore enacted or modified or hereafter established subject to the general policies established by the Board; shall instruct the proper administrative officers to prepare an annual budget which upon approval, shall be recommended to the Board; shall be responsible for the preparation of the annual reports of the Board; shall exercise such other powers, duties and responsibilities as are delegated or required by the Board of Trustees."[7]

---

[6] Michigan State University Board of Trustees By-Laws, Art 11.

[7] Michigan State University Board of Trustees By-Laws, Art 4.

The president of the university has authority under both the above statute and the by-laws to carry into effect the board's ordinances. His authorization of the fee to recover costs relating to towing and impoundment of vehicles parked in violation of university ordinances does not contravene board action. Rather, it complements and implements it.

Plaintiff also contends that it was improper for the university to impose a charge of $5 over and above the actual cost of towing. She analogizes the imposition of the towing fee to the assessment of costs in a criminal trial. While it is true that costs assessed in criminal trials must bear a direct relation to actual costs incurred in a given criminal prosecution,[8] we are not dealing with the assessment of costs in a criminal prosecution in the case at bar. The charge of $5 over and above the actual towing fee is meant to cover the necessary administrative costs of the towing and impoundment program. In providing for the assessment of these costs, which are directly related to the program, the president was acting within the power granted him to carry into effect the ordinances of the trustees.

Plaintiff's final contention is that defendant's actions in towing her vehicle without a prior hearing and assessing the costs of towing against her without providing any opportunity to contest the towing charges deprived her of property without due process of law.

In deciding what process is required to prevent a finding of an erroneous deprivation of a property interest, it is necessary to consider (1) the nature and weight of the private interest affected by the

[8] See, *People v Teasdale,* 335 Mich 1; 55 NW2d 149 (1952), *People v Blachura,* 81 Mich App 399; 265 NW2d 348 (1978).

challenged official action; (2) the risk of an erroneous deprivation of such interest as a result of the summary procedures used; and (3) the governmental function involved and state interests served by such procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought.[9]

The private interest involved here is the plaintiff's interest in the uninterrupted use of her vehicle. While this interest is a substantial one,[10] we note that the denial of plaintiff's property in the instant case was temporary and of short duration.

The risk of an erroneous deprivation of the interest involved as a result of the towing procedure used here is not very great. An officer authorizing the towing of a vehicle can easily ascertain if the vehicle is parked in a lot reserved for faculty and staff and if the vehicle bears a permit.

The governmental interest involved here is the ability of the university to function smoothly by ensuring that its faculty and staff have ready access to parking. The ability of the towing program to effectuate this interest would be largely negated if it was necessary to provide an opportunity for a hearing before any improperly parked vehicle could be towed.

In *Gillam v Landrieu*,[11] the court stated:

"Parking more than four hours in a downtown neighborhood by a non-resident vehicle is not a constitutionally protected right. Overtime parking at a meter is not a constitutionally protected right. A vehicle owner who

---

[9] *Mathews v Eldridge*, 424 US 319; 96 S Ct 893; 47 L Ed 2d 18 (1976), *Mackey v Montrym*, 443 US 1; 99 S Ct 2612; 61 L Ed 2d 321 (1979).

[10] *Mackey v Montrym, supra*, 443 US 11; *Gillam v Landrieu*, 455 F Supp 1030, 1038 (ED La, 1978).

[11] *Gillam v Landrieu, supra*, 1037-1038.

engages in any such prohibited conduct is not effectuating a constitutionally protected right but is rather being antisocial. He does have the right to use of his automobile, a constitutional right to use of property. But that right is not entirely unfettered. It is subject to the legitimate limitations placed on its exercise by the state pursuant to its police power. Towing and impounding are reasonable procedures to effectuate that police power against antisocial car owners.

"Plaintiff seems to contend that unless there is an emergency, the city cannot tow or impound a vehicle suspected of having been parked in a residential neighborhood for more than twenty-four hours. This proposition seems very unreasonable. Whether a neighborhood is residential or commercial, there is an interest in keeping streets clear of unnecessary obstructions. The city keeps the streets clean as possible from ordinary litter. An abandoned vehicle is not merely unsightly (as is all litter) but also creates serious inconvenience to motorists and risk of accident to the extent it impedes traffic flow. Accordingly, the city has a legitimate interest in removing such vehicles as soon as reasonably possible. * * *

"The city's concerns in regulating the use of its streets are not limited to public safety and convenience, but also encompass public health and welfare. A party who parks his car in the same street location for more than the allowed period of time is, in effect, 'hogging' that public resource and not allowing other members of the public to get their fair share, certainly a serious impingement on the public welfare. A vehicle which remains in the same location for a lengthy period prevents the sanitation department from cleaning the portions of the street occupied by the car, threatening the public health by allowing accumulation of filth and litter."

The court in *Gillam* did strike down the ordinance there as being overbroad because it allowed towing and impounding for violation of "any traffic law". The ordinances in question in the instant case are explicit as to when vehicles can be towed

and, consequently, are not overbroad. The issues in *Gillam* concerning nonprompt notice and the assessment of storage fees prior to the sending of notice were not raised here.

Finally, we reject defendant's contention that it is entitled to attorney's fees under GCR 1963, 816.5. We do not find that plaintiff has raised a clearly frivolous appeal which lacks merit in fact as well as law.

Affirmed.

G. R. Deneweth, J. *(concurring)*. I concur in the result reached by the majority herein. I write only to indicate a difference with my brothers relative to the question of costs.

I would vote to assess costs under GCR 1963, 816.5, as prayed for by the defendant. It appears to this writer that this entire litigation has been wholly frivolous and vexatious and is of a type which, unfortunately, has become popular of late, with consequent myriad bottlenecks created in judicial process. The defendant is entitled to costs, especially in view of the fact that the defense of this wholly frivolous proceeding has required financing out of public tax dollars which would have been better spent elsewhere for much more important and worthy purposes.

T. M. Burns, P.J., *(dissenting)*. I dissent because I cannot agree with the majority's resolution of plaintiff's due process claim.

Due process is a fluid and flexible concept that provides fundamental protection from unreasonable governmental intrusion. There are no rigid forms for the application of due process; rather, it adheres in whatever form is most appropriate whenever private property or personal liberty is threatened.

The basic indispensible elements of due process consist of a hearing before an impartial decision maker in which a citizen is given the opportunity to present his or her case after having been given adequate notice of the reason underlying the deprivation of liberty or property. *Mathews v Eldridge*, 424 US 319; 96 S Ct 893; 47 L Ed 2d 18 (1976). The standards of due process are not merely theoretical, they are substantial safeguards that must be tailored to each situation.

There is no doubt but that even the temporary loss of the use of one's automobile deprives the owner of a property interest that falls within the protection of the due process clause. *Stypmann v San Francisco*, 557 F2d 1338 (CA 9, 1977), *Huemmer v Ocean City*, 474 F Supp 704 (D Md, 1979), *Craig v Carson*, 449 F Supp 385 (MD Fla, 1978), *Graff v Nicholl*, 370 F Supp 974 (ND Ill, 1974). Therefore, I am unpersuaded by the majority's parenthetical notation that the property deprivation suffered by plaintiff was only "temporary and of short duration". Rather, I further challenge the validity of that proposition on its face.

This case, and those like it in which property is taken by the state and withheld from its rightful owner until a fee is paid, present not one but alternate property deprivations to an individual. That is, the individual is given the choice of either accepting permanent loss of the property or permanent loss of whatever sum of money is required to redeem it. As was aptly stated by the Court in *Craig v Carson, supra*, 394:

"The ordinances authorizing the assessment of towing and storage charges, the requirement that they be prepaid before return of the owner's car, the creation of a lien against the car for those charges, and the foreclosure of the lien and forfeiture of the car after sixty

days, are utterly devoid of any procedural due process safeguards. The ordinances confront the owner of a car that has been towed and stored with the proverbial Hobson's choice: he must pay the charges assessed against him or forfeit his car. Under either alternative, the owner is compelled to relinquish his personal property, whether his car or his money, without an opportunity to dispute the loss. See *Seals v Nicholl,* 378 F Supp [172 (ND Ill, 1973)] at 177.

"The importance of a person's interest in his car is obvious in today's society, for purposes of earning a living, conducting one's business affairs, and carrying on the majority of one's activities. See *Stypmann v San Francisco,* 557 F2d at 1342-43; *Holladay v Roberts,* 425 F Supp 61, 66 n 6 (ND Miss, 1977). Similarly, one's interest in being free from unjustified payments of charges and fees is equally obvious. The governmental ways cannot justify the withholding of a person's car, or assessing him for towing and storing charges, without any opportunity to determine the validity of either. The fact that the procedure under the ordinances might be administratively more convenient, expeditious, and inexpensive, is no excuse or justification for the absence of procedural due process protections."

The Michigan State University towing ordinance unconstitutionally deprives an automobile owner of property without due process of law. The seizing and towing of a vehicle without a prior hearing can be justified only in situations where the governmental interest is overriding, that is, where the car is a safety hazard. Even in such situations, an adequate opportunity for a hearing must be accorded promptly after the seizure. *Tedeschi v Blackwood,* 410 F Supp 34 (D Conn, 1976), *Watters v Parrish,* 402 F Supp 696 (WD Va, 1975).

Perhaps it may be true that very few cars towed under this ordinance were properly parked. However that is no justification for depriving the owners of such vehicles of their use. Far less intrusive

methods of enforcing parking regulations easily can be devised. For instance, the levying of an appropriate fine might well be sufficient to force compliance with these regulations, and such a fine would not be unconstitutional if it were exacted after proper notice and hearing.

In sum, the Michigan State University ordinance is unconstitutional because it permits the state to deprive an automobile owner of his or her property without first affording notice and hearing. Moreover, it also violates due process because it requires the payment of a fee in order to secure return of the automobile without first affording the vehicle's owner a hearing to contest the validity of the fine.

I neither favor nor approve of any procedure by which a citizen is deprived of his or her property that is justified only because it is administratively convenient. Much the less can I approve of a procedure by which an arm of the state permits private towing concerns to get rich off towing automobiles belonging to a segment of our society, students, that can least afford their redemption price.

Finally, I would caution all state universities that have towing provisions similar to the instant one that they are responsible and must answer for the actions of the private agents they choose to tow parked automobiles. Universities may be called upon to recompense the injuries suffered by an automobile owner when the university's agent damages the vehicles or when the owner is deprived of its use solely on account of some business procedure of the agent.

The Michigan State towing ordinance violates due process. The lower court erred in granting summary judgment to defendant. I would reverse.