[No. 4068–II.   Division Two.   February 27, 1981.]

BUFFELEN WOODWORKING COMPANY, *Respondent*, v. HENRY W. COOK, *Appellant.*

*Edwin J. Wheeler,* for appellant.

*Darrel B. Addington,* for respondent.

PETRIE, J.—In this case we are asked to declare that jury review of workers' compensation claims, as authorized by the workers' compensation act, RCW Title 51, denies procedural due process afforded by the state and federal constitutions. For the reasons stated below, we hold that such jury review does not deny due process.

In 1977, Henry W. Cook filed a claim for medical aid and compensation benefits under the workers' compensation act for injuries he allegedly sustained in the course of his employment with Buffelen Woodworking Company. Following allowance of the claim by the Department of Labor and Industries as an "industrial injury," Buffelen, a self–insurer under the act, filed a notice of appeal with the Board of Industrial Insurance Appeals. At issue throughout the proceedings and the ensuing appeals was whether the worker sustained his back injury at the jobsite, or elsewhere. After hearing Mr. Cook's testimony and that of five other witnesses, the hearing examiner found the worker was injured in the course of his employment. Buffelen's petition to the board for review of the examiner's proposed decision and order was denied.

As authorized by RCW 51.52.110, Buffelen appealed the order to superior court and demanded a 6–person jury. Mr. Cook moved for summary judgment, requesting that the court take the issue of occurrence of the injury from the jury. The motion was denied. Pursuant to RCW 51.52.115,

the jury conducted a de novo review of facts as found in the board record. Specifically, the jury was asked, "Did Henry W. Cook slip on some steps and fall on February 28, 1977?" The jury responded negatively. Accordingly, the court entered a judgment denying Mr. Cook's claim. He appeals to this court, contending that jury review of allowance of an industrial insurance claim, based on the board record, when the crucial issue is the credibility of witnesses, violates the due process clause of the fourteenth amendment to the United States Constitution and article 1, section 3 of the Washington State Constitution.

RCW 51.52.115 provides in pertinent part:

> The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court as provided in RCW 51.52.110: . . . The proceedings in every such appeal shall be informal and summary, but full opportunity to ·be heard shall be had before judgment is pronounced. In all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same. . . . In appeals to the superior court hereunder, either party shall be entitled to a trial by jury upon demand, and the jury's verdict shall have the same force and effect .as in actions at law. Where the court submits a case to the jury, the court shall by instruction advise the jury of the exact findings of the board on each material issue before the court.

In practice the jury's de novo review is not a silent reading of the verbatim report of proceedings. Instead, counsel for the litigants adopt unique "role playing" capacities and "read" their respective parts to the jury, in the same manner as they would when reading a witness' deposition. The jury is then informed that the board's decision is presumed correct and the burden is on the appealing party to establish by a preponderance of the evidence that it is incorrect. *Allison v. Department of Labor & Indus.*, 66 Wn.2d 263, 401 · P.2d 982 (1965). After deliberation, the jury is

requested to return a special verdict form evaluating the correctness of the disputed board findings. *See* WPI 155.13, 6 Wash. Prac. 469 (2d ed. 1980).

In assessing the worker's due process claim we begin with a familiar premise. Legislative enactments are presumed to be constitutional, and the party challenging constitutionality of a specific statute has the burden of establishing beyond a reasonable doubt that it is unconstitutional. *In re Harbert,* 85 Wn.2d 719, 538 P.2d 1212 (1975); *Toulou v. Department of Social & Health Servs.,* 27 Wn. App. 137, 616 P.2d 678 (1980). We are reminded by the employer that various provisions of the workers' compensation act, including those relating to jury review of claims, have survived constitutional attack. *State ex rel. Davis–Smith Co. V. Clausen,* 65 Wash. 156, 117 P. 1101 (1911); *Floyd v. Department of Labor & Indus.,* 44 Wn.2d 560, 269 P.2d 563 (1954). But our courts have not addressed the specific question: Is this jury review process a constitutionally defective form of claim determination?

The federal and state constitutions protect against state government deprivation of life, liberty and property without due process of law. U.S. Const. amend. 14; Const. art. 1, § 3. It seems apparent that two issues must be resolved. First, what is the nature of the property interest the worker seeks to protect? Second, what process is due the worker on appeal?

Property interests "protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." (Footnote omitted.) *Board of Regents v. Roth,* 408 U.S. 564, 571–72, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972). To have a protected property interest the party must have more than a need or unilateral expectation. He must have a "legitimate claim of entitlement to it." *Roth,* at 577. Property interests

> are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of

entitlement to those benefits.

*Id.* at 577, 33 L. Ed. 2d at 561. The procedural safeguards of the Fourteenth Amendment should not be limited to presently enjoyed interests, but should be afforded when the law confers some benefit, provided certain criteria are met. L. Tribe, *American Constitutional Law* § 10–9, at 518–19 (1978).

We perceive a worker's interest in potential benefits as substantial because of the statutory abrogation of his common law right to sue his employer for work–related injuries in exchange for his exclusive remedy under the workers' compensation act. *See* RCW 51.04.010. We hold that an applicant for workers' compensation benefits whose claim is not finally adjudicated has a property interest of sufficient magnitude to trigger the application of procedural due process requirements. *Davis v. United States,* 415 F. Supp. 1086 (D. Kan. 1976).

We next determine how much process is due under the constitution for protection of that interest. The due process clause serves to minimize substantially unfair or mistaken deprivation of property. *Fuentes v. Shevin,* 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972). The fundamental requirement of due process is the opportunity to be heard "'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). The concept of due process is flexible and should be afforded as the situation demands. *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972).

In determining how much process is due we consider the private interest to be protected, the risk of erroneous deprivation of that interest by the presently employed procedures, and the government's interest in maintaining or modifying those procedures. *Mathews v. Eldridge, supra* at 335.

Mr. Cook contends that jury evaluation of the issue of the occurrence of the "happening" which produced the

"result" (RCW 51.08.100)—essentially a credibility issue—without the benefit of live testimony, denies procedural due process and is fundamentally unfair.[1] Because we regard the worker's claim to benefits (and his employer's potential cost to provide it) as substantial, the fact–finding process should facilitate correct determinations. The risk of erroneous deprivation is minimized early in the process when the hearing examiner, who usually hears live testimony, initiates the fact–finding process. The board's confirmation or alteration of the examiner's decision, however, is the first step in the process made without benefit of the fact finder's ability to observe the witnesses.

Jury review of those disputed findings, as the second step in that review process, conceivably increases the risk of erroneous deprivation of the worker's (or employer's) property interest. The critical question is whether the cumulative effect is so great as to produce a substantial risk of distortion between the jury's determination and the reality of the actual fact. In order to resolve that question we must first take a closer look at the traditional jury process.

Anglo–American jurisprudence widely and perhaps wisely recognizes as preeminent among all other processes the truth–finding capability of a selectively chosen few of the litigants' peers. Their collective wisdom under the guidance of a learned director produces a consensus judgment after a relatively brief and reasonably controlled exposure to the best remembered recollections and cautiously mannered demeanor of presently available and solemnly sworn witnesses, the totality of whose actual knowledge and experience is deemed by trained advocates to represent the reality of any given fact or event. Nevertheless, the accuracy of the peers' judgment is measured in terms of a reasoned probability attenuated by the only sometimes

---

[1]Mr. Cook suggests that only cases of "pure credibility" (did the accident occur?) should be withdrawn from the jury's consideration. But he would not preclude the jury evaluating, without live testimony, conflicting medical opinions as to the existence or extent of an injury.

discoverable biases and proficiencies of all participants in the total process.

It would serve no useful purpose to enumerate a litany of the vagaries and variables inherent in this revered system. Suffice it to say that the modifications of the system chosen by the legislature in its consummate wisdom to produce the ultimate finding of fact in the workers' compensation adjudication process removes from the traditional system only the peers' ability to observe the demeanor of the several witnesses. Additionally introduced into the system is the variable of the reading and acting skills of the contesting counsel. The peers are also admonished to presume as correct the fact determinations previously made in the cause by a board of experts selectively chosen from a background of varied experiences in workers' compensation matters.

Those modifications from the traditional jury process are not inconsequential. Nevertheless, this adjudication process has been extant in this jurisdiction for more than 30 years without substantial change and with no observable inclination by the legislature to introduce a different system for producing the ultimate fact in any aspect of the workers' compensation adjudication process.

In the absence of any respectable data indicating the present system produces a considerable variation between the jury's consensus judgment and reality, we decline to declare that it violates a worker's (or his employer's) constitutional guaranty to due process of law. Rather, we leave to the legislature and the political process any decision designed to provide a more nearly certain attainment of the truth.

We consider jury review of workers' compensation claims an unusual facet of an administrative law fact–finding determination. But we find that the statutory safeguards are commensurate with the interest protected. We cannot find that the system is so susceptible to error as to deny due process of law.

Accordingly, we affirm.

PEARSON, A.C.J., and PETRICH, J., concur.

Reconsideration denied March 12, 1981.

Review denied by Supreme Court May 8, 1981.