Stephen PATTERSON, Plaintiff-Appellee,

v.

Dan CRONIN and the City and County of Denver, a municipal corporation, Defendants-Appellants.

No. 80SA80.

Supreme Court of Colorado,
En Banc.

Aug. 23, 1982.
Rehearing Denied Sept. 7, 1982.

Frye & Sawaya, John R. Frye, Jr., Richard B. Rose, Denver, for plaintiff-appellee.

Max P. Zall, City Atty., Gerald Himelgrin, Asst. City Atty., Denver, for defendants-appellants.

ERICKSON, Justice.

The appellant, City and County of Denver (Denver), has appealed from a decision of the Denver District Court which held that service of a summons for a parking violation by affixing a summons and complaint to an unattended automobile is invalid. The district court concluded that the method of service of process, permitted by section 505.4 of the Revised Municipal Code of the City and County of Denver (Municipal Code),[1] was defective because it did not comply with the methods of service required by Rule 206(f) of the Colorado Municipal Court Rules of Procedure (Municipal Court Rules).[2] We affirm the district court judgment but upon different grounds.

I.

Prior to August 17, 1977, Stephen Patterson's Checker automobile, bearing New Mexico license plate number BSB065, was illegally parked in Denver on seven separate occasions. In each instance, a summons and complaint was affixed to the windshield of his automobile. The summons ordered Patterson to appear before the Denver Traffic Violations Bureau within seven days to answer the alleged violation of the Municipal Code for illegal parking. Additionally, each summons contained the following warning:

"IMPORTANT: FAILURE TO RESPOND WITHIN 30 DAYS OF ISSUE DATE WILL SUBJECT THE VIOLATOR TO SUCH OTHER PENALTIES AS PRESCRIBED BY LAW, INCLUDING THE IMPOUNDING OF THE VEHICLE INVOLVED AND THE ISSUANCE OF A WARRANT FOR THE ARREST OF THE VIOLATOR."

In each of the seven instances, Patterson failed to respond. Accordingly, the Denver Traffic Violations Bureau issued an order that his automobile be immobilized in accordance with the provisions of section 505.-11–1(15) of the Denver Municipal Code.[3] Pursuant to the order, a "boot" was at-

---

1. Section 505.4 of the Denver Municipal Code provides:

 "*Notice of Illegally Parked Vehicles.* Whenever any motor vehicle without driver is found stopped or parked in violation of the restrictions imposed by this Main Division FIVE of the Revised Municipal Code, any police officer or any employee of the City and County of Denver, designated by the Manager of Safety and Excise to give such notices as a part of his official duties, finding such vehicle, shall take its registration number and may take any other information displayed on the vehicle which may identify its user, and shall conspicuously affix to such vehicle a notice in writing on a form authorized by section 505.1 hereof, for the driver thereof to respond to and answer the charge against him within seven (7) days at the Traffic Violations Bureau. The officer or employee shall send one copy of the notice so issued to the Chief of Police and one copy to the Traffic Violations Bureau."

2. C.M.C.R. 206(f) provides:

 "A summons or summons and complaint issued pursuant to these rules shall be served personally upon the defendant and a copy given to him. In lieu of personal service, service may be made by leaving a copy of the summons or summons and complaint at the defendant's usual place of abode with some person over the age of eighteen years residing therein or by mailing a copy to the defendant's last known address by certified mail, return receipt requested, not less than five days prior to the time the defendant is required to appear."

3. Section 505.11–1(15) provides in pertinent part:

 "When a driver, owner, or person in charge of such vehicle has failed to respond to a notice of illegal parking ... and has also failed to respond to the additional notice sent to the registered owner ... employees of the City and County of Denver, acting in their official capacity, and officers of the Police Department may, and they are hereby autho-

tached to the automobile on August 17, 1977, by a member of the Denver Sheriff's Department.[4] In addition, an immobilization notice was affixed to the vehicle which provided in pertinent part:

"RELEASE:

Release can be obtained at the Clerk's Office of the county court, Room 106, City and County Building, .... Arrangements for the release must be made within 72 hours after the installation of this device or the vehicle will be removed from the street and impounded pursuant to section 505.11–1(15). NO CHECKS ACCEPTED IN PAYMENT OF FINES."

The boot was removed the following day when Patterson appeared before the traffic bureau and paid his accumulated fines and a ten dollar "boot" fee.[5]

On August 30, 1977, Patterson filed a civil rights action in the Denver District Court alleging that the City's failure to provide a hearing before immobilizing his automobile violated his right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article II, section 25 of the Colorado Constitution. He sought damages pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985 for the alleged unconstitutional deprivation of the use of his automobile.[6] In ruling on the complaint, the trial court did not reach the issue of whether due process required a predeprivation hearing before a motor vehicle may be immobilized. Instead, the court concluded that because the service of the individual parking summonses by affixing them to Patterson's automobile did not comply with the notice require-

ments of C.M.C.R. 206(f), Patterson was not required to respond to the parking violation charges. Accordingly, the subsequent immobilization of his vehicle pursuant to section 505.11–1(15) constituted a taking of property without due process of law. The court then concluded that Patterson failed to prove actual damage resulting from the immobilization of his vehicle but that Patterson was entitled to nominal damages in the sum of $250.

## II.

■ Initially, we disagree with the trial court's conclusion that Denver's practice of affixing a summons and complaint to the windshield of an unattended motor vehicle is improper notice of a parking violation. Although the method of service in issue here is not specifically sanctioned by C.M.C.R. 206(f), we hold that it is sufficient for the limited purpose of notifying the owner of an unattended motor vehicle of a parking violation.[7]

■ The authority to promulgate and interpret the Municipal Court Rules is vested in this Court pursuant to Article VI, sections 2 and 21 of the Colorado Constitution. Fundamental rules of statutory construction require that the Municipal Court Rules be liberally construed when read as a whole, and we must adopt a construction consistent with the purpose of the rules. *Rowe v. Watered Down Farms,* 195 Colo. 152, 576 P.2d 172 (1978); *Westminster v. Phillips,* 164 Colo. 378, 435 P.2d 240 (1967). The purposes of the Municipal Court Rules are to "secure simplicity in procedure, fair-

---

rized to temporarily and for a period of seventy-two (72) hours, immobilize such vehicle by installing on, or attaching to such vehicle, a device designed to restrict the normal movement of such vehicle...."

4. The boot consists of metal clamps, screws, and a padlocking device which, when attached to the wheel of a vehicle, prevents it from being driven.

5. In 1982, the "boot" fee was raised by the City and County of Denver to fifty dollars.

6. Patterson's complaint sought both actual and punitive damages from Cronin, Manager of

Safety for the City and County of Denver, and Officer Lavato, the member of the Denver Sheriff's Department who immobilized Patterson's automobile. Prior to trial, Patterson amended his complaint waiving the punitive damage claim and substituting the City and County of Denver as a defendant in place of Officer Lavato.

7. Should the driver of the unlawfully parked vehicle be found with the automobile, section 505.2–2 of the Municipal Code requires personal service in compliance with C.M.C.R. 206(f).

ness in administration and the elimination of unjustifiable expense and delay." C.M. C.R. 202. Denver issues over 650,000 summonses for illegal parking each year. To require personal service of each summons would not be consistent with the purposes of the Municipal Court Rules in securing simplicity in procedure or eliminating unjustifiable expense and delay. The Municipal Court Rules were not intended to provide a basis for serving the owner or possessor of unlawfully parked motor vehicles. A requirement of personal service for such violations would be impracticable and unduly burdensome on Denver's law enforcement resources and would unreasonably delay the resolution of the charges. Prima facie responsibility for an unlawfully parked motor vehicle may be imposed upon the registered owner by a municipality's use of its police power in the enactment of traffic ordinances. *City of Columbus v. Webster,* 170 Ohio St. 327, 164 N.E.2d 734 (1960). *Accord Baker v. City of Iowa City,* 260 N.W.2d 427 (Iowa 1977).

■ We do not believe that fundamental principles of due process require personal service of parking summonses. In *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed.2d 865 (1950), the United States Supreme Court set forth the following test to be applied in determining whether the method of service utilized to provide notice satisfies the requirements of due process:

"The means employed [to provide notice] must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." 339 U.S. at 315, 70 S.Ct. at 657, 94 L.Ed.2d at 874.

*See also MacMillan v. MacMillan,* 174 Colo. 20, 482 P.2d 107 (1971). Applying the *Mullane* test to the method of service now under review, we conclude that the practice of affixing summonses and complaints to illegally parked vehicles which are left unattended is a method of service reasonably certain to provide notice of the violation. Although a summons so served may not always be received due to outside forces, due process does not require that the adopted method of service be absolutely certain to provide notice in every instance. *Mullane v. Central Hanover Bank and Trust Co., supra; see also MacMillan v. MacMillan, supra.* In addition, if no response to the summons is received by the Traffic Violations Bureau within seven days, section 505.5 of the Denver Municipal Code provides that a subsequent notice of the violation shall be mailed to the violator.[8]

We therefore hold that the fundamental principles of due process are satisfied by the methods of service and the notice of parking violations currently provided by Denver. Accordingly, we reverse the decision of the trial court on the issue of service.

### III.

■ Patterson claims that the immobilization of his vehicle without notice and the right to a hearing violated his right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution and Article II, section 25 of the Colorado Constitution.[9] We agree.

---

**8.** Section 505.5 of the Denver Municipal Code provides:

"*Failure to Comply with Notice Attached to Parked Vehicle.* If a violator of the restrictions on stopping, standing or parking under Main Division FIVE of this Revised Municipal Code, does not respond to a notice affixed to such motor vehicle within a period of seven (7) days, by appearance at the Traffic Violations Bureau and arranging for payment, or other disposition of the charge, or by mailing payment by means of the United States Mails, the Traffic Violations Bureau shall send another notice by mail to the owner of the vehicle to which the original notice was affixed, informing him of the violation."

**9.** We are not precluded from addressing this issue by the fact that it was not ruled on by the court below since the parties to this action raised the issue in their trial court pleadings. As such, it is properly before us at this time. *Cf. Matthews v. Tri-County Water Conservancy District,* Colo., 613 P.2d 889 (1980); *Board*

■ Procedural due process requires that a person with a possessory interest in property seized by the state must be afforded an opportunity for a hearing and adequate notice of the hearing. *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *New Safari Lounge v. Colorado Springs,* 193 Colo. 428, 567 P.2d 372 (1977). As the United States Supreme Court has stated in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972):

> "For more than a century the central meaning of procedural due process had been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" (Citations omitted.) 407 U.S. at 80, 92 S.Ct. at 1994, 32 L.Ed.2d at 569–70.

As now enforced, the property interests deprived by the immobilization procedure of section 505.11–1(15) of the Denver Municipal Code are twofold: (1) an interest in and use of the immobilized vehicle; and (2) an interest in the "boot" fee collected by Denver for the removal of the immobilization device. Both interests may be significant to the individual involved.

■ First, an owner's right to the continued possession and uninterrupted use of his vehicle is protected by the constitutional provisions of due process. A person's ability to make a living as well as access to both the necessities and amenities of life may depend on the availability of an automobile when needed. *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *Stypmann v. San Francisco,* 557 F.2d 1338 (9th Cir. 1977); *Graff v. Nichol,* 370 F.Supp. 974 (N.D. Ill. 1974). While the owner's interest may only be temporarily restricted before the boot is removed upon payment of the accumulated parking fines and a "boot" fee, it does not diminish the fact that a deprivation has occurred in violation of due process: [10]

> "[Due process] draws no bright lines around three-day, 10 day or 50 day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause. Although the length or severity of the deprivation of use or possession would be another factor to weigh in determining the appropriate form of a hearing, it [is] not deemed determinative of the right to a hearing of some sort.'" (Citations omitted.) *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. at 606, 95 S.Ct. at 42, 722 L.Ed.2d at 757.

■ Secondly, the individual's interest in the money used to pay the "boot" fee collected by Denver for the removal of the immobilization device itself is also constitutionally protected. *See Remm v. Landrieu,* 418 F.Supp. 542 (E.D. La. 1976). *See also Webbs Fabulous Pharmacies v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980); *Buffelen Woodworking Co. v. Cook,* 28 Wash.App. 501, 625 P.2d 703 (1981). Inasmuch as the ordinance now under review provides no mechanism whereby the owner of the automobile can challenge the immobilization procedure as improper, the deprivation which results from the payment of the "boot" fee must be considered final.[11]

---

*of Adjustment of Adams County v. Iwerks,* 135 Colo. 578, 316 P.2d 573 (1957).

**10.** In the following instances, the temporary deprivation of a vehicle or related interest was deemed sufficiently significant to warrant a predeprivation hearing: *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 39 L.Ed.2d 90 (1971) (temporary suspension of a driver's license); *Tedeschi v. Blackwood,* 410 F.Supp. 34 (D.C. Conn. 1976) (temporary impoundment of apparently abandoned vehicles); *Graff v.*

*Nichols,* 370 F.Supp. 974 (N.D. Ill. 1974) (temporary impoundment of abandoned vehicles).

**11.** Our conclusion is not altered by Denver's contention that, should the immobilization be improper, it "stands ready to answer in damages for said error." A subsequent action for damages does not cure the due process infirmity which results from the failure to provide a hearing in compliance with the requirements of due process. *Fuentes v. Shevin,* 407 U.S. 67, 82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

Therefore, because constitutionally protected private interests are involved when an automobile is immobilized pursuant to section 505.11–1(15) of the Denver Municipal Code, we conclude that the due process requirements of a hearing and adequate notice of the hearing must be provided.[12]

 Once a property or liberty deprivation is shown, the fundamental procedural due process safeguards of notice and an opportunity to be heard "at a meaningful time and in a meaningful manner" are absolute. However, the specific procedures required will vary depending upon the nature of each case. *Craig v. Carson,* 449 F.Supp. 385 (M.D. Fla. 1978). *See Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed.2d 865 (1950). In determining what procedures must be afforded to satisfy constitutional due process requirements in a particular case, the United States Supreme Court has formulated a balancing test which weighs the following three factors: (1) the kind of private interest at stake; (2) the risk of an erroneous deprivation of that interest and the probable value of additional or substitute procedures in reducing the risk; and (3) the public or governmental interest involved and the fiscal and administrative burden additional procedural requirements would entail. *Smith v. Organization of Foster Families,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977); *Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Craig v. Carson, supra. See L. Tribe, American Constitutional Law* § 10–13, at 540 (1978). *See also New Safari Lounge v. Colorado Springs,* 193 Colo. 428, 567 P.2d 372 (1977).

A balancing of the three factors is generally the approach used to determine the timing of the required hearing. *See, e.g.,*

*Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *New Safari Lounge v. Colorado Springs, supra.* The United States Supreme Court has long recognized an exception to the general rule that the deprivation of property requires a pre-deprivation hearing in extraordinary circumstances where a valid governmental interest is at stake which justifies postponing the hearing until after the event. *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Fuentes v. Shevin, supra; Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). In such cases, the balancing approach recognizes that the fiscal and administrative burden of a pre-deprivation hearing may outweigh the incremental benefits in fairness and accuracy resulting from such a hearing, especially in cases which occur in large numbers or involve relatively little risk of error or temporary deprivations. *Mathews v. Eldridge, supra. See Tribe, supra* at § 10–14.

 In this case, the magnitude of the private interest at stake is the temporary loss of the use of the automobile and any funds paid for the release of the vehicle. Although these are clearly property interests sufficient to mandate due process protection, they are minimal and of limited duration. *See Mitchell v. W. T. Grant Co., supra; New Safari Lounge v. Colorado Springs, supra.* Moreover, the risk of erroneous deprivation is also minimal here. It is a simple procedure to determine that a parking violation has occurred. *See Sutton v. City of Milwaukee,* 672 F.2d 644 (7th Cir. 1982). Under the system presently used in Denver, the violator has already had an opportunity to contest the validity of each ticket he receives. Those instances in which some administrative error has occurred could satisfactorily be resolved at a post-immobilization hearing.

---

**12.** While recognizing the private interests involved when a vehicle is immobilized, we are not unmindful of Denver's significant interest in the effective enforcement of its parking regulations. We do not believe, however, that its interest is jeopardized by our conclusion in this case. The only interest which we perceive to be at stake is avoiding the additional inconven-ience and expense which will result from compliance with due process requirements. However, "while the problem of additional expense must be kept in mind, it does not justify denying a hearing meeting the ordinary standards of due process." *Goldberg v. Kelly,* 397 U.S. 254, 261, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287, 295 (1970).

In contrast, the governmental interest in enforcing parking ordinances is an important one for the safety of the public. Denver authorities issue over 650,000 summonses for illegal parking each year. Because vehicles are, by their nature, movable, and because the violators subject to the immobilization procedure have a history of failing to respond to summonses, the "boot" has proved a practical method of insuring a violator's presence before the proper authorities and the disposition of overdue summonses. In light of the vast number of violations involved, the requirement of personal service and an opportunity for a prior hearing might well overwhelm the administrative machinery in place to deal with traffic violations. On the contrary, if the vast majority of violators chose to ignore the notice informing them of the possibility that their vehicle would be "booted," just as they have ignored all prior notices, the prior hearing requirement would fail to serve the due process purpose for which it is intended.

We therefore conclude that a hearing is not constitutionally mandated prior to the immobilization of a motor vehicle, so long as a prompt and adequate proceeding is available upon demand after the immobilization has occurred. Under the procedures currently followed in Denver, however, no post-deprivation hearing is so provided to persons whose vehicles have been immobilized by the "boot." As stated in the immobilization notice affixed to the immobilized vehicle, release can be obtained only after the owner pays a "boot" fee and all accumulated fines registered against the vehicle. No provision exists in the ordinance for obtaining release of the vehicle by posting a bond while a deprivation hearing is pending. See North Georgia Finishing, Inc.

v. Di-Chem, Inc., supra (Powell, J., concurring). Nor is there any provision which would mitigate the loss if the detention of the vehicle is improper. See Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Moreover, the ordinance as written and enforced lacks any procedure whereby the owner of the vehicle can subsequently challenge the immobilization as unjustified. See Calero-Toledo v. Pearson Yacht Leasing Co., supra; New Safari Lounge v. Colorado Springs, supra; Baker v. Iowa City, 260 N.W.2d 427 (Iowa 1977). Because no opportunity is given under the present scheme to contest Denver's action immobilizing a motor vehicle at a prompt post-deprivation hearing, we conclude that the immobilization of Patterson's vehicle violated his right to due process of law.[13]

## IV.

At the conclusion of trial, the lower court held that Patterson had failed to prove that he had suffered any actual damage as a result of his automobile's immobilization. Nevertheless, the court awarded Patterson $250 in nominal damages, concluding:

> "[N]ominal damages are available in recognition of the intrinsic value associated with constitutionally protected rights. In order to assure that procedural due process is strictly observed, the deprivation of this right is actionable for nominal damages without proof of injury."

Denver does not dispute either that nominal damages are recoverable in a 42 U.S.C. § 1983 action or the amount of the award itself. Rather, it argues that it is immune from any damage liability inasmuch as the

---

**13.** Although Denver must provide an opportunity for a hearing once an automobile is immobilized pursuant to section 505.11–1(15) of the Denver Municipal Code, it is not necessary to define what form the immobilization hearing must take. In our view, Denver should be left with the flexibility to tailor its procedures in order to preserve its legitimate law enforcement goals while, at the same time, providing a meaningful opportunity for the vehicle owner to be heard in accordance with constitutionally mandated due process requirements. Thus, in drafting a new ordinance, should it choose to do so, Denver should weigh the various interests affected by the enforcement procedure, and adopt a procedure which will afford due process to the owner of the vehicle. See Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

order to immobilize Patterson's vehicle was issued by the Traffic Violations Bureau of the Denver County Court. The municipality maintains that it cannot be held liable for the acts of its judicial branch. We disagree.

The doctrine of judicial immunity which Denver seeks to invoke in this case as a shield to liability extends only to judicial officers, *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and those "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (absolute immunity held by prosecutors); *Spaulding v. Nielson*, 599 F.2d 728 (5th Cir. 1979) (immunity applies to probation officers); *Slotnick v. Garfinkle*, 632 F.2d 163 (1st Cir. 1980) (court clerks enjoy absolute immunity). Judicial immunity, however, does not extend to those unassociated with the judicial process, *Crowe v. Lucas*, 595 F.2d 985 (5th Cir. 1979) (judicial immunity does not apply to city police officers carrying out judicial orders), nor does it extend to municipalities. *Monell v. Dept. of Social Services of City of N.Y.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 611 (1978); *Heimbach v. Village of Lyons*, 597 F.2d 344 (2d Cir. 1979). *See also Calhoun v. City of Providence*, R.I., 390 A.2d 350 (1978); *Mauro v. County of Kittitas*, 26 Wash.App. 538, 613 P.2d 195 (1980). Accordingly, Denver's claim that judicial immunity acts to preclude its liability is without merit.

Furthermore, we do not believe that the act complained of in this case represents judicial action. While the order to immobilize Patterson's vehicle originated in the county court, it appears to us that this order was simply a clerical entry made by an administrative employee of that court. The record is void of any evidence which would indicate that the court engaged in an independent determination as to the propriety of the order prior to its issuance. We are not prepared to provide an avenue by which a municipality may escape liability for unconstitutional conduct by cloaking that conduct in the guise of judicial action. Inasmuch as no further challenge is made to the nominal damage award in this case, we affirm that portion of the judgment.

Accordingly, for the reasons expressed herein, the judgment of the district court is affirmed.

ROVIRA, J., concurs in part and dissents in part.

LEE and QUINN, JJ., do not participate.

ROVIRA, Justice, concurring in part and dissenting in part:

I agree with the majority opinion, as expressed in Section II, that fundamental principles of due process are satisfied by methods of service and notice of parking violations currently provided by Denver.[1] I further agree with that part of Section III of the court's opinion that holds that a hearing is not constitutionally mandated prior to the immobilization of a vehicle.

I respectfully disagree with the analysis and conclusions of that part of Section III which holds that Patterson is entitled to a hearing after immobilization (booting) of his vehicle and would therefore reverse the judgment of the district court.

In 1977, Stephen Patterson, who was the owner of an automobile bearing New Mexico license plates, received seven summonses and complaints for illegal parking which were placed on the windshield of his car. He admitted that he received and ignored each of these summonses and complaints and did not appear before the Traffic Violations Bureau within seven days to either pay or contest the charges of illegal parking pursuant to section 505.5 of the Denver Municipal Code.

Patterson, having admitted that he received the summonses and complaints, was also aware that if he did not respond to the

---

1. Sections 505.4 and 505.5 of the Denver Municipal Code. *See* fn. 1 and 8 of the majority opinion.

charge his vehicle was subject to being impounded.[2]

Patterson's argument that he was denied due process of law rises or falls on whether the notice that he received was adequate and provided him an opportunity to contest the charge of illegal parking. The summons and complaint advised the recipient that, "If you wish to protest any charge you may appear before a referee between the hours of 8:00 a.m. to 12:00 noon or 2 p.m. to 4:45 p.m."

Patterson failed, in each of seven instances, to avail himself of the opportunity to contest the charge of illegal parking and therefore by his own acts, or failure to act, placed himself in jeopardy of having his automobile "booted."

In my view, the summonses and complaints he received were sufficient notice of his right to a hearing and the possible penalty of impoundment to permit the booting. Having been given notice of and the opportunity for a hearing at a meaningful time and in a meaningful manner, the requirements of procedural due process have been met. *See Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

The court's opinion correctly points out that a person with an "interest in the property to be seized must be afforded an opportunity for a hearing and adequate notice of the hearing." It notes that the owner of an automobile has a right to the use of his property and an interest in the boot fee he has paid for the removal of the boot. It then concludes that the Denver ordinance is unconstitutional because it provides no mechanism whereby the owner of the automobile can challenge, in a post-deprivation hearing, the booting procedure as improper. Further, it condemns the ordinance because no provision exists for obtaining release of a vehicle by posting a bond while a deprivation hearing is pending.

It is here that I part company with the majority opinion, for it is my view that Patterson had ample opportunity to challenge the basic underlying offense which resulted in his car's being booted and failed to do so. Patterson's failure to respond to the tickets which were affixed to his car foreclosed his contesting the fines which were applied against his car and obviated the necessity of allowing him to post a bond while a deprivation hearing was pending. In short, Patterson was not entitled to a post-deprivation hearing and lacks standing to raise the unconstitutionality of the ordinance because, by his failure to appear in response to the summonses and complaints, he was in default and had confessed his guilt of the underlying offense, illegal parking.

Patterson had ample opportunity to challenge the charge of illegal parking which was the basis of the original booting and failed to do so. He is not entitled, nor does due process require, another opportunity to challenge the booting as unjustified.

In essence, the majority opinion countenances the acts of a citizen in ignoring the law and rewards the scoff law who habitually violates parking regulations and ignores tickets placed on his car.

I would reverse the judgment of the district court.

**2.** The summons contained the following language:

"IMPORTANT: FAILURE TO RESPOND WITHIN 30 DAYS OF ISSUE DATE WILL SUBJECT THE VIOLATOR TO SUCH OTH-ER PENALTIES AS PRESCRIBED BY LAW, INCLUDING THE IMPOUNDING OF THE VEHICLE INVOLVED AND THE ISSUANCE OF A WARRANT FOR THE ARREST OF THE VIOLATOR."