MOLONY-VIERSTRA v MICHIGAN STATE UNIVERSITY

Docket No. 66888. Decided March 25, 1983. On application by the plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave to appeal, reversed the judgments of the Court of Claims and the Court of Appeals and remanded the case to the Court of Claims for further proceedings.

The Michigan State University Department of Public Safety ticketed a motor vehicle owned by Karen Molony-Vierstra and directed a private towing company to remove it to an impoundment lot. To get it back, she had to pay a $20 towing fee. She brought a class action against the university in the Court of Claims, seeking a declaration that the ordinance prescribing the towing was void and a determination that the towing of vehicles without prior notice and an opportunity for a hearing was a denial of due process. The Court of Claims, Robert Holmes Bell, J., granted the university's motion for summary judgment. The Court of Appeals, Beasley, P.J., with Deneweth, J., concurring in the result (T. M. Burns, J., dissenting), affirmed (Docket No. 46845). The plaintiff appeals.

In an opinion per curiam, signed by Chief Justice Williams and Justices Kavanagh, Levin, Ryan, Brickley, and Cavanagh, the Supreme Court *held:*

The university was without authority to enact an ordinance authorizing towing of motor vehicles as a routine measure to aid in the enforcement of parking regulations. The ordinance was not in substantial conformity with the Uniform Traffic Code for Cities, Townships, and Villages which authorizes towing of dangerous, obstructive, or abandoned vehicles.

Reversed and remanded.

101 Mich App 353; 301 NW2d 18 (1980) reversed.

*Vande Bunte, Kinkade & Preston* (by *Richard W. Kinkade)* for the plaintiffs.

*Byron H. Higgins* for the university.

PER CURIAM. This case involves the towing of

automobiles that are illegally parked. Michigan State University uses towing as a means of enforcing its parking regulations. The issue before us is whether the university's towing ordinance is authorized by statute. We hold that it is not.

I

On February 22, 1979, the plaintiff's husband parked her motor vehicle on the campus of Michigan State University. As the plaintiff has acknowledged from the beginning, the vehicle was parked in a lot that is reserved for vehicles with faculty and staff permits, despite the fact that the vehicle did not have such a permit. The Michigan State University Department of Public Safety ticketed the vehicle and directed that a private towing company remove the vehicle to an impoundment lot. In order to retrieve her vehicle, the plaintiff was required to pay a $20 towing fee.

The plaintiff then filed a complaint in the Court of Claims in which she asked that the ordinance under which the towing took place be declared void and that it be determined that the university was denying due process of law in towing vehicles without prior notice or an opportunity for a hearing.

Without answering the complaint, the university filed a motion for summary judgment which the Court of Claims granted. The three Court of Appeals judges split in their view of this case. Judge BEASLEY found neither a statutory nor constitutional flaw in the university towing practice that was before him. Judge DENEWETH concurred in the result. Judge T. M. BURNS dissented. He was persuaded by the plaintiff that the university had

deprived her of due process of law. *Molony-Vierstra v Michigan State University,* 101 Mich App 353; 301 NW2d 18 (1980). Over Judge T. M. BURNS' dissent, the Court of Appeals denied a rehearing.

## II

We find it unnecessary to decide the constitutional question which has been so ably debated by the Court of Appeals panel.[1] Rather, we believe that the plaintiff is correct in contending that the university is without authority to enact the ordinance under which the towing took place.

It is clear, as Judge BEASLEY explained, that the Board of Trustees of Michigan State University has the general power and obligation to oversee the safe and responsible operation of the university. Const 1963, art 8, § 5; MCL 390.102, 390.106; MSA 15.1122, 15.1126. The specific authorization for the university to enact parking, traffic, and pedestrian ordinances is found in MCL 390.891; MSA 15.1120(51). This statutory provision requires a parking, traffic, or pedestrian ordinance to "be in substantial conformity" with the Uniform Traffic Code that the Department of State Police has promulgated pursuant to MCL 257.951; MSA 9.2651.

At the time of the incident that forms the basis of this litigation, § 2.5 of the Uniform Traffic Code read:[2]

---

[1] Other courts have split on the question whether, and to what extent, the constitution protects persons from summary towing and subsequent impoundment. Compare, for example, *Patterson v Cronin,* 650 P2d 531 (Colo, 1982) and *Sutton v City of Milwaukee,* 672 F2d 644 (CA 7, 1982).

[2] This language is reproduced in 1979 AC, R 28.1105. Section 2.5 has since been amended, primarily to provide detailed procedures for the disposition of impounded vehicles. The language now provides for

"A member of the police department may remove a vehicle from a street or highway to the nearest garage or other place of safety, or to a garage designated or maintained by the police department or otherwise maintained by this governmental unit, under the circumstances hereinafter enumerated. The necessary costs for the removal shall become a lien on the vehicle and the person into whose custody the vehicle is given may hold it until the expenses involved have been paid:

"(a) When a vehicle is left unattended on a bridge, viaduct, causeway, subway, tube, or tunnel where the vehicle constitutes an obstruction to traffic.

"(b) When a vehicle on a street is so disabled as to constitute an obstruction to traffic, and the person in charge of the vehicle is, by reason of physical injury, incapacitated to such an extent as to be unable to provide for its custody or removal.

"(c) When a vehicle is left unattended on a street and is so parked as to constitute a definite hazard or obstruction to the normal movement of traffic.

"(d) When a vehicle is found being driven on the streets or highways in such an unsafe condition as to endanger persons or property.

"(e) When a vehicle is left unattended on a street continuously for more than 48 hours and may be presumed to be abandoned.

"(f) When the driver of the vehicle is taken into custody by the police department and the vehicle would thereby be left unattended upon the street.

"(g) When removal is necessary in the interest of public safety because of fire, flood, storm, snow, or other emergency reason.

"(h) When a vehicle is found parked in a 'tow-away zone' designated by the traffic engineer and properly signposted."

The corresponding university ordinance[3] read:

".03—Impound vehicles. Members of the Department

---

removal "from public property or any other place open to travel by the public". See 1981 AACS, R 28.1105(1).

[3] Michigan State University Ordinances, 1974, § 46.03 et seq.

of Public Safety are hereby authorized to remove a vehicle from a street, highway or parking area to the nearest garage or other place of safety, or to a garage designated or maintained by the Department of Public Safety, under the circumstances hereinafter enumerated:

".031—When any vehicle is left unattended upon any bridge, viaduct or causeway, or subway where such vehicle constitutes an obstruction to traffic;

".032—When a vehicle upon a highway is so disabled as to constitute an obstruction to traffic and the person or persons in charge of the vehicle are by reason of physical injury incapacitated to such an extent as to be unable to provide for its custody or removal;

".033—When any vehicle is left unattended upon a street or parking area and is so parked illegally as to constitute a definite hazard or obstruction to the normal movement of traffic;

".034—When a vehicle is found being driven upon the streets and is not in proper condition to be driven;

".035—When a vehicle is left unattended upon a street continuously for more than forty-eight hours and may be presumed to be abandoned;

".036—When the driver of such vehicle is taken into custody by the Department of Public Safety and such vehicle would thereby be left unattended upon the street;

".037—When removal is necessary in the interest of public safety because of fire, flood, storm, snow or other emergency reason;

".038—When any vehicle is left unattended in any parking area under such circumstances as to be presumed to be abandoned;

".039—When any vehicle is found in violation and where it is determined that there are three or more outstanding violation citations against the same vehicle. Such a vehicle shall not be released from impoundment until there is satisfactory evidence that all outstanding citations relating to the vehicle have been cleared with the Court;

".0310—When any vehicle is found parked in an area specifically reserved for vehicles bearing a certain type

of university permit or in a parking space specifically reserved for the exclusive use of one vehicle;

".0311—When any vehicle is found parked so as to obstruct university operations or is parked on lawns or in shrubbery."

Judge BEASLEY believed the university ordinance to be in "substantial conformity" with the Uniform Traffic Code:

"This portion of the ordinance is closely modeled after § 2.5 of the Uniform Traffic Code. While the ordinances include situations where parked vehicles can be towed which are not included in the Code, these modifications appear to be a reasonable attempt to adopt the Code—which was promulgated for use by cities, townships and villages—to the particular needs of Michigan State University. It is noted that the board of trustees is granted authority to enact parking ordinances in MCL 390.891; MSA 15.1120(51), and that the Uniform Traffic Code does not cover the subject of off-street parking. We find that the challenged portion of the ordinance is in 'substantial conformity' with the Uniform Traffic Code and that there is a valid statutory basis for [its] adoption." *Molony-Vierstra, supra,* 101 Mich App 361.

We disagree. While it is obvious that the ordinance is "closely modeled" on § 2.5 of the Uniform Traffic Code, we do not think that sufficient.[4] To be "closely modeled" is not necessarily to be in "substantial conformity". An examination of § 2.5 reveals eight lettered paragraphs describing situations in which towing is authorized. Each describes a situation in which the public is endangered,

---

[4] Judge BEASLEY's opinion contains a statement that "the Uniform Traffic Code does not cover the subject of off-street parking". The fact remains, though, that MCL 390.891; MSA 15.1120(51) provides that parking ordinances, as well as traffic and pedestrian ordinances, "shall be in substantial conformity" with the code.

traffic is obstructed, or a vehicle could not be moved unless it were towed.[5]

The final paragraphs of the ordinance, however, are quite different. Sections 46.039 and 46.0310 call for towing in situations quite unlike those found in the code. An ordinance that uses towing as a routine measure to aid in the enforcement of parking regulations is not in "substantial conformity" with a traffic code that authorizes towing of dangerous, obstructive, and abandoned vehicles.

In lieu of granting leave to appeal, we reverse the judgments of the Court of Claims and Court of Appeals and remand this case to the Court of Claims for further proceedings not inconsistent with this opinion.

WILLIAMS, C.J., and KAVANAGH, LEVIN, RYAN, BRICKLEY, and CAVANAGH, JJ., concurred.

[5] Paragraph (h) says that one may tow a vehicle that is "found parked in a 'tow-away zone' designated by the traffic engineer and properly signposted". Neither the Legislature nor the Department of State Police could have intended to delegate to the traffic engineers of the state the unfettered discretion to designate any spot in the state as a tow-away zone. Read *in pari materia* with the preceding paragraphs, paragraph (h) could permit designation of a tow-away zone where there is a particular need.