345 S.E.2d 779

**Samuel BARRON**

v.

**BOARD OF TRUSTEES OF the POLICE-MEN'S PENSION & RELIEF FUND,
etc., and Walter Pifer, Individually and
as Mayor, etc.**

No. 16516.

Supreme Court of Appeals of
West Virginia.

Nov. 21, 1985.

George Zivkovich, Parkersburg, for appellant.

Marian Lisa Yoke, Parkersburg, for Bd. of Trustees.

MILLER, Chief Justice:

In this appeal we are asked to decide whether a claimant for disability benefits under the Policemen's Pension and Relief Fund, as provided in W.Va.Code, 8–22–16 through –28, was unconstitutionally deprived of the benefits without due process of law, and if so, to determine what process is due.

The appellant, Samuel Barron, had been a member of the Police Department of Vienna, West Virginia, since October 1, 1971. During his employment, he had made the requisite contributions to the Policemen's Pension and Relief Fund. On August 30, 1983, Mr. Barron applied to the Pension Fund Board of Trustees [1] for disability benefits. He submitted to the Board a letter dated September 9, 1983, from his treating physician, Robert Bruce, Jr., M.D., that said Mr. Barron had "totally lost function of his macula in the left eye due to the presumed ocular histoplasmosis syndrome." The doctor indicated that this condition "eliminates his binocular vision which gives him depth perception" and concluded "this probably will make him unfit for police service."

Under the procedures prescribed by W.Va.Code, 8–22–23a(a),[2] the Board directed Mr. Barron to be examined by two physicians at the West Virginia University Department of Opthalmology in Morgantown, West Virginia. There, William Schenk, M.D., and George W. Weinstein, M.D., examined Mr. Barron pursuant to instructions provided by the Board. They reported to the Board by letter on October 5, 1983. Their report was dictated by Dr. Schenk and signed only by Dr. Weinstein. Thus, instead of preparing two independent reports, the two examining physicians made one report in which they both, apparently, concurred. This report, while finding Mr. Barron had ocular histoplasmosis in the left eye, concluded the condition was not disabling. Based on this report, the Board, on October 13, 1983, denied Mr. Barron's request for disability benefits.

Two weeks later, Mr. Barron reapplied and asked the Board to authorize medical opinions from physicians in Charleston and Huntington. He submitted an additional letter from Dr. Bruce which took exception to the Schenk-Weinstein report in its finding of a corrected visual acuity in the left

1. According to W.Va.Code, 8–22–18, the Board of Trustees consists of the mayor of the municipality and four members of the paid police department. Samuel Barron was a member of the Vienna Police Department Board of Trustees at the time he applied for disability retirement benefits but he abstained from acting as a member of the Board in all matters relating to his own claim.

2. W.Va.Code, 8–22–23a(a), provides:
"All members applying for total and temporary or total and permanent disability benefits after the thirtieth day of June, one thousand nine hundred eighty-one, shall be examined by at least two physicians under the direction

of the staff at Marshall University, West Virginia University, Morgantown or West Virginia University, Charleston: Provided, that if such member's medical condition cannot be agreed upon by two such physicians, a third physician shall examine such member. Such medical examination shall include the review of such member's medical history. The expense of the member's transportation to such medical examination and the expense of the medical examination shall be paid by the board of trustees, such medical expense shall not exceed the reasonable and customary charges for such services."

eye of 20/70. It was Dr. Bruce's opinion that "the central area of vision of the retina in the left eye ... has been totally involved with a lesion from the presumed ocular histoplasmosis syndrome."

Although the Board agreed to permit Mr. Barron to be examined by other physicians, it was unable to follow through because it found there were no eye clinics at Marshall University or at West Virginia University, Charleston, which are the statutorily designated examining locations. W.Va.Code, 8–22–23a(a).

The Board then asked Drs. Schenk and Weinstein for a clarification of their diagnosis. It received a report, again dictated by Dr. Schenk and signed only by Dr. Weinstein, that said "Barron can not be considered visually disabled as long as the right eye remains normal. This is true whether the vision in the left eye is 20/400 or 20/70." It concluded "that Federal requirements for disability stipulate that best corrected visual acuity must be equal to or worse than 20/200 in the better eye." Based on this report, the Board again denied Mr. Barron's disability request.

Mr. Barron's counsel filed an objection and requested a hearing before the Board. The Board denied a hearing stating it was "not within the Board's power or authority to overturn the Doctors's (sic) directive." Mr. Barron renewed his request for a hearing and asked that he be given an opportunity to cross-examine the West Virginia University doctors and to present evidence on his own behalf. The Board did not grant the right to a hearing.

Subsequently, Mr. Barron filed this action in the Circuit Court of Wood County to compel the Board to grant him the right to a hearing and to cross-examine the doctors. The circuit court denied relief stating Mr. Barron had "not shown a clear legal right to mandamus nor a corresponding duty on the part of the Board."

## I.

### THE PROTECTED INTEREST

The Fifth and Fourteenth Amendments to the Constitution of the United States and Article III, Section 10 of the Constitution of West Virginia, require procedural safeguards against state action that affects a liberty or property interest. We spoke of this concept at some length in *Waite v. Civil Service Comm'n*, 161 W.Va. 154, 241 S.E.2d 164 (1977), and we concluded in Syllabus Points 1 and 3:

"1. The Due Process Clause, Article III, Section 10 of the West Virginia Constitution, requires procedural safeguards against State action which affects a liberty or property interest."

"3. A 'property interest' includes not only the traditional notions of real and personal property, but also extends to those benefits to which an individual may be deemed to have a legitimate claim of entitlement under existing rules or understandings."

*See also Major v. DeFrench*, 169 W.Va. 241, 286 S.E.2d 688 (1982); *Kisner v. Public Serv. Comm'n*, 163 W.Va. 565, 569–70, 258 S.E.2d 586, 588–89 (1979); *State ex rel. McLendon v. Morton*, 162 W.Va. 431, 249 S.E.2d 919 (1978); *North v. West Virginia Bd. of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977).

In both *Major* and *McLendon*, we dealt with individuals who were in a probationary status but had satisfied objective eligibility requirements that were established by their state employer. Consequently, we concluded that they had a legitimate claim of entitlement, which could not be severed without some procedural due process, as we explained in *McLendon*, 162 W.Va. at 438, 249 S.E.2d at 923:

"As noted above, [*Board of Regents v.*] *Roth*[, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ] and *Waite* [*v. Civil Service Comm'n*, 161 W.Va. 154, 241 S.E.2d 164 (1977) ] recognized that existing rules or understandings between the institution and the individual could give rise to a legitimate claim of entitlement. *Perry* [*v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) ] teaches that they need not be written, but can evolve in a *de facto* fashion—a position followed by other courts in tenure cases." (Citations omitted).

We also pointed out in *McLendon* that "[o]ther courts have found entitlements based on statutory language," 162 W.Va. at 439, 249 S.E.2d at 923 (citations omitted), and found an analogy with our earlier cases where we had granted mandamus against public officials who had refused to issue licenses to qualified applicants. *E.g., Beverly Grill, Inc. v. Crow,* 133 W.Va. 214, 57 S.E.2d 244 (1949); *State ex rel. Hoffman v. Town of Clendenin,* 92 W.Va. 618, 115 S.E. 583 (1923).

The State created the Policemen's Pension and Relief Fund in W.Va.Code, 8–22–16 through –28, giving its contributing members the legitimate expectation that should they become disabled, the pension fund would pay them a certain percentage of their customary salary. *See* W.Va.Code, 8–22–24. Entitlement to these benefits is determined by objective criteria such as length of service and by medical opinions, and is not purely discretionary with the Board of Trustees. Once a member meets the statutory criteria, he is entitled to the benefits. *State ex rel. Williams v. Board of Trustees,* 147 W.Va. 795, 131 S.E.2d 612 (1963). We believe these statutory standards meet the test for a property interest since they create a legitimate claim of entitlement for a prospective pensioner under *Major, McLendon,* and *Waite. See Griffeth v. Detrich,* 603 F.2d 118 (9th Cir.1979), *cert. denied sub nom. Peer v. Griffeth,* 445 U.S. 970, 100 S.Ct. 1348, 64 L.Ed.2d 247 (1980); *Buffelen Woodworking Co. v. Cook,* 28 Wash.App. 501, 625 P.2d 703 (1981).

This is in accord with other decisions that have held that applicants for government benefits and entitlements are entitled to due process. *See, e.g., Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (admission to practice law); *Kelly v. Railroad Retirement Bd.,* 625 F.2d 486 (3d Cir.1980) (applicant for disabled child annuity under Railroad Retirement Act); *Wright v. Califano,* 587 F.2d 345 (7th Cir.1978) (applicant for social security benefits); *Ressler v. Pierce,* 692 F.2d 1212 (9th Cir.1982) (applicants for federally subsidized housing); *Griffeth v.*

*Detrich, supra* (applicant for general relief); *Geneva Towers Tenants Org. v. Federated Mortgage Investors,* 504 F.2d 483 (9th Cir.1974) (applicants for federally subsidized housing); *National Ass'n of Radiation Survivors v. Walters,* 589 F.Supp. 1302 (N.D.Cal.1984), *rev'd on other grounds,* 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985) (veterans benefits); *Davis v. United States,* 415 F.Supp. 1086 (D.Kan.1976) (applicant for injury compensation due to prison employment); *Shaw v. Weinberger,* 395 F.Supp. 268 (W.D.N.C.1975) (applicant for Supplemental Security Income); *Barnett v. Lindsay,* 319 F.Supp. 610 (D.Utah 1970) (applicant for welfare benefits); *Elizondo v. State,* 194 Colo. 113, 570 P.2d 518 (1977) (applicant for probationary driver's license); *Viglietta v. Blum,* 108 Misc.2d 516, 437 N.Y.S.2d 625 (1981) (applicant for medical assistance benefits); *Buffelen Woodworking Co. v. Cook, supra* (applicant for worker's compensation).

The Board relies on *Cawley v. Board of Trustees,* 138 W.Va. 571, 76 S.E.2d 683 (1953), where this Court stated a prospective beneficiary of the Firemen's Pension or Relief Fund does not have a vested right in it. In *Cawley,* the Court did recognize "they may have an expectancy to participate in the fund when otherwise qualified." 138 W.Va. at 581, 76 S.E.2d at 689. The problem in *Cawley* was that the individual was found ineligible because of age. The Court did not have occasion to consider whether he had some procedural due process rights to establish his qualifications since such question was not in dispute. Moreover, *Cawley* was decided long before the seminal decisions of *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), which expanded the property interest concept for procedural due process purposes and which form the basis for our holdings in *Major, McLendon, Waite,* and *North.*

We, therefore, conclude that a police officer who is a member of the Policemen's Pension and Relief Fund created under W.Va.Code, 8–22–16 through –28, does

have a property interest in such Fund that gives rise to some procedural due process protection.

## II.

## DEGREE OF PROTECTION AFFORDED

As we pointed out in *Waite,* following the principles of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), once a protected property interest is found, then the extent of due process protection that should be afforded is determined by a balancing test which we summarized in Syllabus Point 5 of *Waite:*

"The extent of due process protection affordable for a property interest requires consideration of three distinct factors: first, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of a property interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*See also Major v. DeFrench, supra; State ex rel. McLendon v. Morton, supra.*

■ Although the Board initially argues that under W.Va.Code, 8–22–23a, they have no discretion to evaluate the disability reports of the physicians, we do not agree. The statute provides that "members applying for ... disability benefits ... shall be examined by at least two physicians under the direction of the staff of Marshall University, West Virginia University, Morgantown or West Virginia University, Charleston." W.Va.Code, 8–22–23a(a).[3]

Certainly, common sense would dictate that before the Board authorizes a referral

to the statutorily designated physicians, the member applying for disability benefits ought to initially supply the Board with some medical evidence that he is disabled. This was done in the present case by Mr. Barron when he supplied to the Board a report from his treating physician, Dr. Bruce.

This section also states if the two physicians cannot agree "a third physician shall examine such member." W.Va.Code, 8–22–23a(a). However, it does not specifically state who selects the third physician but again we believe that common sense dictates that the Board should designate.[4]

Furthermore, W.Va.Code, 8–22–17, provides, in part, "[a]ny such board of trustees may also in its corporate name do and perform any and all other acts and business pertaining to the trust created hereby...." This language suggests that the Board can exercise some discretion in carrying out its duties with regard to determining whether disability benefits should be awarded or denied based on the medical reports submitted to it. *See* 3 E. McQuillin, The Law of Municipal Corporations 641 (3d ed. 1982). We stated in *State Human Rights Comm'n v. Pauley,* 158 W.Va. 495, 498, 212 S.E.2d 77, 78 (1975), *disapproved in part on other grounds, State Human Rights Comm'n v. Pearlman Realty Agency,* 161 W.Va. 1, 239 S.E.2d 145 (1977), that "an administrative agency possesses, in addition to the powers expressly conferred by statute, such powers as are reasonably and necessarily implied in the exercise of its duties in accomplishing the purposes of the act." *See also Colvin v. State Workmen's Compensation Comm'n,* 154 W.Va. 280, 175 S.E.2d 186 (1970); *Mohr v. County Court,* 145 W.Va. 377, 115 S.E.2d 806 (1960).

Returning to the question of the procedural due process that is due, we recognize

---

**3.** See note 2 for full text of this subdivision.

**4.** Although not argued by the parties, it appears that W.Va.Code, 8–22–23a(a), contains some ambiguity in the phrase "shall be examined by at least two physicians under the direction of the staff at Marshall University [or] West Virginia University." In the present case, it appears that

the only eye clinic which could evaluate Barron's visual impairment was West Virginia University. Conceivably, the quoted portion of the statute would permit any qualified physicians to make the examination so long as it was done "under the direction of the staff" at the designated institutions.

that the private interest that is affected by the official action is not insubstantial. Pension and disability benefits, which are the covered entitlements, provide important economic benefits. They are equivalent to the tenure rights that we termed "a valuable property interest" in *McLendon.*

The second factor is the risk of erroneous deprivation. This risk is not as consequential as in *McLendon* where the question of tenure rests on a variety of criteria utilized to evaluate a teacher's performance, which may be difficult to settle without some type of evidentiary hearing. Here, the chief issue is one of medical disability, but we recognize that it can involve some complicated issues as this case illustrates. Consequently, we can perceive the need for some procedure to explore and develop disputed facts. However, we do not believe that a full adversarial evidentiary hearing is required.

Finally, the State's interest in avoiding increased fiscal and administrative costs resulting from the procedural process requirements is not an insubstantial consideration. Many municipalities in this State are financially depressed. Because of the statutory scheme, the physicians chiefly involved are from Charleston, Huntington, and Morgantown. It would be difficult from a time and expense standpoint for them to attend hearings in other places. By requiring them to attend, they may well refuse employment initially. It would seem sufficient to resolve any ambiguities in their medical reports through the use of depositions.

We conclude that several additional procedural safeguards could be taken that would not unduly encumber the process or add significantly to the Board's expense. The aggrieved member or his retained attorney should have the right to appear before the Board to present to it the reasons why a pension is warranted in a given case. A similar right should be accorded the municipality to oppose the pension, if desired. Finally, the Board should file a written statement for its actions.

We have previously held that if the Board acts improperly with regard to denying a pension to an otherwise qualified member, mandamus will lie to correct its action. *State ex rel. Williams v. Board of Trustees, supra.*

Thus, to summarize the procedural due process rights that should be accorded a member of the Policemen's Pension and Relief Fund, created under W.Va.Code, 8–22–16, such member is entitled to retained counsel, to take the deposition of physicians appointed by the Board, to appear before the Board to present his reasons why he qualifies, and to have the Board give a written statement outlining its reasons for denying benefits.

We reverse this case in order to permit Mr. Barron to have the benefit of these procedural safeguards. In so doing, we wish to make clear that we express no opinion with regard to the underlying merits of his claim.

Reversed and Remanded.